JOHN CLEAVELAND & others *vs.* JOHN W. NORTON.

The fourth section of the *St.* 1783, *c.* 5, for incorporating the proprietors of Matta-kesset creeks in Edgartown, which imposes a penalty on any person who shall, without liberty first obtained of said proprietors, "presume to set, draw, or stretch any seine or dragnet, or set up any wears, or make use of any other fishing engine, in any part of the said creeks or ponds adjacent on the great pond, where the fish usually cast their spawn, or at or near the mouth of the said creeks, so as to take or obstruct the alewives or other fish that pass up or down the said creeks," does not apply to the taking of fish by such means in the arms, coves, or bays of the great pond.

THIS was a *qui tam* action to recover a penalty of the defendant for setting, drawing, and stretching a seine for the taking of alewives in Jane's cove, in the town of Edgartown, in contravention of the *St.* 1783, *c.* 5, § 4,* (1 Mass. Special

---

* The following is a copy of the title, preamble, and fourth section of this statute, and a synopsis of the other sections : —

"An act incorporating the Proprietors of Mattakesset-Creeks (so called) in the town of Edgartown, in the county of Dukes county, into a body politic, by the name of the Proprietors of Mattakesset-Creeks; and also for the regulating and better improving the low grounds and meadows adjoining the said creeks and Great Pond (so called) in the said town.

"Whereas the proprietors of the town of Edgartown, in the county of Dukes county, did formerly grant the privilege of the fishery in Mattakesset-creeks, in the said town, unto John Butler, Enoch Coffin, Benjamin Smith, John Pease, Thomas Vinton, Brotherton Dagget, Timothy Dagget, Tristram Coffin, Gershom Dunham, and John Stuart, their heirs and assigns forever, together with such others as should from time to time be taken in with them: And whereas they, their heirs, assigns, and associates, have been at considerable labor and expense in digging and keeping open a water passage for the fish called alewives, and other fish, from the sea into the pond called the great pond, being wholly within the bounds of the said town of Edgartown; And whereas, the present owners and proprietors of the said fishery have represented to this court, that their being incorporated into a body politic would remedy many inconveniences to which they are

Laws, 51.) The action was originally brought before a trial-justice for the county of Dukes county, who gave judgment for the plaintiffs, whereupon the defendant appealed to the court of common pleas.

At the trial before *Mellen,* J., in that court, several points (chiefly relating to matters of form) were taken for the defendant, which, as they were not passed upon by this court, are not material to be stated.

From a plan in the case, it appeared, that the great pond mentioned in the act is a pond in Edgartown, two and a half

otherwise subject, and as it seems but reasonable and just that the present owners and proprietors of the said fishery should be vested with power to order, manage, and regulate the same ; " therefore, —

The first section incorporates the proprietors.

The second section authorizes them to call meetings and elect necessary officers.

The third authorizes them to make by-laws for the directing, ordering, and managing of their prudential affairs, and to annex penalties for the observance of the same.

" Section 4. *And be it further enacted,* That no person or persons shall, on any pretence whatsoever, (without liberty first obtained of the major part of the said proprietors, in a meeting called for that purpose,) presume to set, draw, or stretch any seine or dragnet, or set up any wears, or make use of any other fishing engine, in any part of the said creeks, or ponds adjacent on the said great pond, where the fish usually cast their spawn, or at or near the mouth of the said creeks, so as to take or obstruct the alewives, or other fish that pass up or down the said creeks, on penalty of five pounds for each offence, to be recovered of every person thus offending, by action of debt, in any court proper to try the same, one moiety thereof to him or them who shall sue for the same, and the other moiety to the use of the poor of the said town.

" And whereas there are divers tracts of low grounds and meadows adjoining the creeks and great pond aforesaid, which low grounds and meadows are owned by divers persons who are differently affected by the draining the water off from the said great pond, and several smaller ponds adjacent to the aforesaid creeks ; and as application has been made to this court by the proprietors of the said creeks and the low grounds and meadows affected thereby ; wherefore, for the appointment of commissioners of sewers for the better ordering and regulating the same,"

The fifth section empowers the governor to appoint commissioners of sewers, to regulate the draining of the great pond, " having particular regard as well to the low grounds and meadows adjoining the great pond and creeks aforesaid, as to the fishery in the said creeks, and to determine according to the value and importance, and the advantages and benefits arising from each."

The sixth section authorizes the commissioners to apportion and assess the expense to and among the several proprietors of the creeks and low grounds, respectively.

miles long, and of very irregular shape, having several bays, arms, or coves on its northerly and easterly sides. One of the smallest or northernmost of these is called Jane's cove, and is about one hundred and seventy rods long, twenty-two rods wide at its mouth, thirty-five rods wide midway of its length, and thence gradually tapering to a point at the end. From the easterly end of the great pond, an artificial canal or outlet leads into and through two very small (Crackatuxet and Monuquoy) ponds, and thence to Mattakesset bay, which communicates with Edgartown harbor. These passages, connecting the great pond with Mattakesset bay, are now and always have been known as the Mattakesset creeks, and are about a mile in length.

The plaintiffs, at the trial, called a witness, who testified, that the defendant, with two other persons, went up to Jane's cove, and, acting together, there set, drew, and stretched a seine and hauled the same, and thereby caught some alewives; that the seine was set about eighty-two rods from the mouth of Jane's cove; that from where they hauled the seine was about twenty-five rods to the brush, and that the creek runs up beyond that fifty or eighty rods; that the alewives generally go up through the creeks to the head of the coves in the great pond, to cast their spawn in the early part of the season; and that between the harbor and the great pond, and not connected with the great pond except by the artificial creeks, were two or three small ponds, as above described, but that no fish were ever known to cast their spawn there.

The defendant admitted the facts, as testified to by the witness; but objected, that upon this evidence, the plaintiffs were not entitled to recover, on the ground, that the statute declared upon only prohibited the acts complained of in any pond *adjacent* to and not connected with the great pond, and that Jane's cove was a part of the great pond itself, and so not within the provisions of the statute. But the judge overruled this objection, and proposed to instruct the jury, upon this evidence, that the words of the statute were broad enough to embrace the coves and creeks connected with the great pond, including Jane's cove, where the acts complained of were committed.

A verdict was thereupon taken for the. plaintiffs, and the defendant excepted.

*B. F. Hallett* and *H. G. O. Colby*, for the defendant.

*T. D. Eliot*, (with whom was *T. G. Coffin*,) for the plaintiff.

The opinion was delivered at the October term, 1851.

SHAW, C. J.   In this case, we have thought it best to pass over the subordinate questions raised and argued, and proceed to the principal question arising upon the construction of the sta tute, under which the plaintiff claims.   This is a *qui tam* action, for a penalty given by an act passed June 24, 1783, (*St.* 1783, *c.* 5,) to secure and protect a fishery in the town of Edgartown. The question is probably an important one, affecting a franchise and exclusive right of fishery, under a charter granted by the legislature, and depends upon the true construction of that statute.   The act is rather obscurely drawn, and it is not easy, upon a first reading, to put a satisfactory construction upon it :  this can only be done by a careful consideration of the words, construed with reference to the objects and purposes recited in the preamble,  and of the localities referred to by all the descriptive words contained in the act,  together with the preëxisting rights of the persons incorporated, and of the public, so far as they can now be ascertained by these recitals.

There are two or three general rules of construction, by the light of which this act of the legislature is to be examined.

The first is, that all penal acts are to be construed strictly, and not extended by equity, or by the probable or supposed intention of the legislature as derived from doubtful words; but that in order to charge a party with a penalty, he must be brought within its operation, as manifested by express words or necessary implication.

Another rule is, that one who claims a franchise or exclusive privilege, in derogation of the common rights of the public, must prove his title thereto by a grant clearly and definitely expressed, and cannot enlarge it, by equivocal or doubtful provisions, or mere probable inferences.

The last rule to be adverted to is, that in all grants, made by the government to individuals, of rights, privileges, and franchises, the words are to be taken most strongly against

the grantee, contrary to the rule applicable to a grant from one individual to another. Such is the rule in regard to grants of like kind from the crown to a subject, on the ground of its being understood, that such grant is made at the solicitation of the subject, and that the act, in which it is expressed, is prepared and submitted by him, and of course the expressions used are those of the grantee.

But, after all, the best ground of exposition is, to take the entire provisions of the act, and ascertain, if possible, what the legislature intended.

This act manifestly contemplates a benefit to two classes of persons, namely, the proprietors of certain fisheries, and the proprietors of meadows and low grounds bordering on the great pond and on certain creeks, both of which objects were to be accomplished by one and the same improvement, that of digging and keeping open a canal or artificial outlet, from the great pond to the salt water in Edgartown harbor. The act makes provision for the accomplishment of this enterprise, and for assessing the expenses thereof equitably upon the proprietors of the said fishery, and on the proprietors of such meadows, in proportion to the benefits derived to them respectively, and for granting indemnity to such proprietors of low grounds, if any, as may be damnified thereby.

The preamble of the act recites, that the proprietors of the town of Edgartown had formerly granted the privilege of the fishery, in Mattakesset creeks, unto John Butler and others named, their heirs and assigns, together with such others as should from time to time be taken in with them; that they had been at considerable expense, in digging and keeping open a passage, for the fish called alewives and other fish, from the sea into the great pond; sets forth the advantage of being incorporated, and that it appears reasonable that the present owners and proprietors of the said fishery should be vested with power, &c.; the act then proceeds, in the first section, to incorporate the present owners and proprietors of the said Mattakesset creeks, under the name of the Proprietors of Mattakesset Creeks, in Edgartown.

It is apparent, that the preamble styles them the owners, &c.,

of the " fishery " in the creeks, and the first section speaks of them as " the proprietors of the creeks." We are therefore to presume, that these descriptions apply to and mean the same persons.

We are not furnished, beyond what is stated in the preamble of this act, with the history and particulars of this grant from the proprietors of the township of Edgartown. A document, which was produced by the defendant's counsel from the secretary's office, as having been filed with the petition, on which this act of incorporation was founded, may possibly be the grant alluded to ; though that appears to have been made, not by the proprietors of Edgartown, but by " the owners and proprietors of the neck of land and ware, at Mattakesset, in the town of Edgartown." It is a vote passed by the proprietary, in March, 1728–9. After setting forth the vast advantages, which would accrue to themselves and the other inhabitants of the town, to have a creek dug and kept open, in respect to the fish, &c., it grants to captain John Butler, and others named, and such others, &c., being the same persons mentioned in the act of incorporation, the whole, sole benefit of the fish that pass up and down said creeks.

Whether this was the grant alluded to in the act is perhaps not very material, because it leaves the conclusion, as it would stand in the act, that these proprietors claimed a privilege, either in the fishery in these creeks, or in the creeks themselves, for the purpose of the fishery. The second section of the act provides for calling and conducting meetings, and the third for making by-laws for the government of the corporation. The fourth section contains the provisions on which the action is brought, and is in substance as follows : — " That no person, without liberty of the proprietors, shall presume to set, draw, or stretch any seine or dragnet, or set up any wears, or make use of any other fishing engine, in any part of said creeks or ponds adjacent on the said great pond, where fish annually cast their spawn, or at or near the mouth of the said creeks, so as to take or obstruct the alewives or other fish that pass up or down the said creeks, on penalty," &c.

From this recital and these provisions, it seems to us very

clear, that the act did not include the great pond itself, as part of the waters within which fishing is prohibited. The terms are inconsistent with this supposition. The persons incorporated are the proprietors of the creeks, or of the fishery in the creeks; and from the terms of the act, and the plan and survey of the lands, these creeks are the artificial cuts through several necks of land, from the harbor to the great pond. The grant is of the exclusive fishing in these creeks, and the prohibition to others, and the penalties to enforce it, are manifestly to secure and protect the grant.

Again, the arms, coves, or bays, opening into the land from the great pond, in one of which the offence is alleged to have been committed, cannot, without doing violence to language, be called "ponds, adjacent on" the great pond; they are parts of the great pond itself.

But it is said, that unless these coves are intended, there are no ponds adjacent on the great pond, and that these words would be without meaning. But in looking at the plan, we find two or three small ponds somewhat near the great pond, into and through which these canals, or artificial passages were cut, from the harbor to the great pond. And although, perhaps, the meaning of the legislature might have been more clearly expressed, yet we are of opinion, that these transition ponds, if we may so call them, are the ponds intended, being ponds in and through which the migratory fish were intended to be protected in their passage from the salt to the fresh water. These migratory fish, salmon, shad, and alewives, we suppose, it is well known, are usually taken in the streams and narrow passages, through which they annually pass to the sheet of still water, in which they cast their spawn. The court are of opinion, construing the grant, and the prohibition with penalties together, as applied to the subject-matter, that it was the intention of the legislature, to grant to the proprietors the entire and exclusive right of fishing in the whole length of these creeks, and to prohibit all other persons from fishing either in the creeks, or in the small ponds near the great pond, through which the fish must pass, and the mouth of the creek entering from the pond, so that the fish which come annually

from the sea, to enter the fresh water pursuant to their instinct and habits, shall be secure from interruption, and subject only to the rights of these proprietors, until they reach the place where they would naturally spread themselves through the large expanse of the great pond.

Considerable stress was laid, at the argument, on the phrase, "where they cast their spawn;" it being in proof, that the small ponds, through which the fish must pass, are not places where the fish cast their spawn, and that the coves and bays of the great pond, especially the place where the defendants are alleged to have drawn their seine, are such places. But as we read and understand this passage in the act, it does not sustain this argument. The whole clause is, that no person shall set any seine, &c., in any part of said creeks, or ponds adjacent on said great pond, where the fish usually spawn, or at or near the mouth of said creeks, so as to take or obstruct the alewives or other fish that pass up or down, &c. According to grammatical construction, and what we think the most obvious meaning of this clause, it qualifies, not "ponds adjacent," but the great pond, as being merely descriptive of the place, to which they have arrived, as the place for casting their spawn. Whether the legislature considered, that they needed no protection beyond that or not, we think they have not extended the proprietors' exclusive right, or the prohibition of others, beyond it. The last clause of the penal provision, "so as to obstruct," strengthens this conclusion; being specially applicable to the annually migrating fish, up and down, as was obviously the main purpose of the act.

Besides, if the construction asked for by the plaintiffs should be adopted, it would make it penal for any person to take any kind of fish, at any season of the year, and if not in every part of the pond, at least in all the coves, bays, and inlets, being part of the pond itself, although such prohibition would not be necessary to secure the proprietors in their fishery, but would be manifestly a large encroachment on the commor. right of fishing in the great pond.

One slight circumstance may be noticed tending to the same conclusion, as to the application of the terms "ponds adja-

Cleaveland & others *v.* Norton.

cent," drawn from the preamble to the 5th section, in regard to draining off the water from the low grounds. It speaks of low grounds adjoining the creeks and great pond, which low grounds are owned by persons differently affected by the draining of the water from the great pond and several smaller ponds, adjacent to said creeks, &c. Here it speaks of the great pond, with its arms and coves, and all lands adjoining it, and then of small ponds " adjacent to the creeks." This leads to a conclusion, that when adjacent ponds are mentioned in the fourth section, the same small ponds are intended.

It was urged, that the legislature intended to make the alewive fishery useful and beneficial to the proprietors, as a reward for the benefit conferred by their enterprise, and that the fishery would not be beneficial, if the alewives were not protected in their places of spawning; and, therefore, to accomplish that intent, the prohibition must be extended, if not to the whole of the great pond, at least to its arms, coves, and bays. This is not a necessary implication, and not sufficient to warrant such a construction of the statute as would subject persons to a penalty. If the legislature intended so to extend the exclusive privilege of these proprietors, or if, in consequence of new and more destructive modes of fishing in the pond, further prohibitions are necessary to secure the rights intended to be granted; and if, as it is strongly insisted, it would be for the public benefit, that this right should be made more secure, it is for the legislature, as guardians of the public, to adopt such regulations, and enforce them by adequate penalties, as may be sufficient to prevent the alewives from being taken in the great pond, or in such parts of it, and for such length of time, and such parts of the year, as may be necessary for that purpose.

Being of opinion, upon the main question, that the defendant was not violating the rights intended to be confirmed by the statute, and not liable for any penalty upon the facts stated in the bill of exceptions, it becomes unnecessary to consider the other grounds of exception. The result is, that the exceptions are sustained, the verdict set aside, and a new trial to be had at the bar of this court.