## DAVID PARKHURST *vs.* GLOUCESTER MUTUAL FISHING INSURANCE COMPANY.

A policy of insurance on a seagoing vessel against the usual marine risks insures against barratry of the master, in the absence of any stipulation to the contrary; even when the assured as owner of the vessel himself appoints the master and mariners.

A policy "causing A. B. to be insured, lost or not lost," a certain sum on a seagoing vessel upon a voyage, without defining the risks assumed by the insurers otherwise than by a clause that they "are not in any case to be held to pay for any loss or damage in consequence of restraint, seizure or detention by any legal or illegal power whatsoever, or for any damage, accident or loss which may happen or occur to any vessel while she may be under such restraint, seizure or detention," insures A. B. on the vessel against the usual marine risks, and among them the barratry of the master.

A usage of the marine underwriters of Boston to expressly except barratry of the master from the risks which they assume on any vessel, whenever the assured is her owner, cannot import such an exception by implication into a policy of marine insurance underwritten at Gloucester.

GRAY, J.   This is an action upon a policy of insurance by which the Gloucester Mutual Fishing Insurance Company "cause David Parkhurst, for whom it may concern, to be insured, lost or not lost," a certain sum for one year on seven eighths of the schooner James Sayward, " to be insured in the manner prescribed by the by-laws, to be subject to all the restraints and liabilities therein set forth." The extracts from the by-laws, which are printed on the third page of the policy, show that it is intended to insure a fishing vessel on a fishing voyage.   But neither the policy nor the by-laws contain any particular enumeration of the risks to be assumed by the underwriters.   On the face of the policy is printed this clause : "And the insurers are not in any case to be held to pay for any loss or damage in consequence of restraint, seizure or detention, by any legal or illegal power whatsoever, or for any damage, accident or loss which may happen or occur to any vessel while she may be under such restraint, detention or seizure." The amount of premium is stated in the margin.

At the trial, it appeared that the vessel was lost in returning from a fishing voyage within the term of the policy.   There was conflicting evidence upon the question whether she accidentally struck upon a rock, or was scuttled and sunk by the master.   The jury found that she was lost by barratry of the master.   The only question reserved is, whether by this policy, as applied to the facts, the plaintiff was insured against such a loss ; and according to our opinion upon that question judgment is to be entered for the plaintiff or the defendants.

It is doubtless necessary that a policy of insurance, read in the light of those facts of which courts must take judicial notice, or which are within the common knowledge of mankind, should express the risks assumed by the underwriters.   But such expression may as well be by general terms as by the usual mode of particular enumeration.   A policy of insurance against all marine risks, or against all the risks which underwriters usually take, is just as binding and effectual as if the risks are specified in detail.   As Chief Justice Marshall said in *Yeaton* v *Fry*, 5 Cranch, 335, 342, " Policies of insurance are generally

the most informal instruments which are brought into courts of justice; and there are no instruments which are more liberally construed, in order to effect the real intention of the parties, if that intention can be clearly ascertained." In that case a recovery was had upon a policy " against all risks, blockaded ports and Hispaniola excepted." And in *Levy* v. *Merrill,* 4 Greenl. 180, an insurance against " the risks contained in all regular policies of insurance " was held to cover a loss by capture. Even a mere agreement to insure a certain sum on a certain vessel at a certain valuation for a certain voyage is sufficient to bind the insurers to make out a policy in the usual form and containing the usual clauses. *Oliver* v. *Mutual Commercial Insurance Co.* 2 Curtis C. C. 290, 291.

The policy before us declares that the defendants cause the plaintiff to be insured a certain sum on a definite interest in a seagoing vessel, " lost or not lost." The contract is in terms a policy of insurance, and of marine insurance, which is as much as to say, a policy of insurance against the usual marine risks.

Those risks, according to the common and almost universal enumeration in English and American policies of insurance, include not only perils of the seas, fire, enemies, pirates, thieves, arrests, restraints and detainments of kings, princes and people, but barratry of the master and mariners. A substantially similar form, expressed in almost the same words, has been used in England for more than two centuries. 1 West's Simboleography, § 663. Malynes, 108. In *Jefferies* v. *Legendra,* decided in the second or third year of William and Mary, the policy in which is described in Carth. 216, and 3 Lev. 320, as " in the usual form," and in 2 Salk. 443, as against " perils of the sea, pirates, enemies, &c.," Lord Holt remarked, by way of illustration, " Suppose the master had committed barratry, the insurers are liable." 1 Show. 326; *S. C.* Holt, 466. Many English cases of insurance against barratry, decided before the American Revolution, are collected in the fifth chapter of Mr. Justice Park's treatise. And in *Earle* v. *Rowcroft,* 8 East, 134, Lord Ellenborough said, " Barratry has from the earliest times held its place as a subject of indemnity in British policies of insurance."

By Vaucher's Guide to Marine Insurances, published in London in 1834, and "containing the policies of the principal commercial town's in the world," it appears that "barratry of the master and mariners" is one of the risks specified in the ordinary form of policy not only throughout the British dominions and the United States, but in France, (limited indeed in the port of Marseilles to French vessels,) Germany and the North of Europe, and that the only ports in which it is omitted are those of Italy, Spain and Portugal, and Alexandria.

In France, in early times, a specific enumeration of risks was not an essential part of the policy, and insurers were responsible *ipso jure* for barratry. Cleirac, Emerigon and other jurists were of opinion that upon general principles insurers were so liable, if not discharged by some particular enactment, such as the French Ordinance of 1681, which provided that they should not be responsible for loss or damage to vessels and goods by the fault of masters and mariners, unless expressly charged in the policy with the barratry of the master. Other commentators were of opinion that insurers could not be held liable for barratry, without an express stipulation to that effect. Guidon, *c.* 1, art. 1; *c.* 2, art. 1; *c.* 5, art. 6; *c.* 9, art. 1; *c.* 17, art. 1. Cleirac, 217, 231, 254, 290, 291, 329, 451. Emerigon des Assurances, *c.* 2, sect. 7; *c.* 12, sects. 3, 7, and authors cited. 2 Valin, 79, 80. But it would be superfluous to enter upon a critical examination and comparison of their conflicting statements, and of 'he local laws and usages by which they were more or less influenced. It is sufficient for this case that barratry is and long has been a usual marine risk wherever our law prevails.

In *Waters* v. *Merchants' Louisville Insurance Co.* 11 Pet. 213, cited for the defendants, the policy which was held not to cover a loss by barratry impliedly excluded that risk, by enumerating the risks assumed as those of "rivers, fire, enemies, pirates, assailing thieves, and all other losses and misfortunes which shall come to the hurt or detriment of the steamboat, her engines, tackle and furniture, according to the true intent and meaning of the policy." Even in that case a loss by fire arising from negligence of the master and crew was held to be within the policy; and

the court cited with approval the words of Mr. Justice Bayley, in delivering the opinion of the court of queen's bench, holding that insurers against fire and barratry were not exempt from loss by fire occasioned by such negligence : " The object of the assured certainly was to protect himself against all the risks incident to a marine adventure. The underwriter being therefore liable *primâ facie* by the express terms of the policy, it lies upon him to discharge himself." *Busk* v. *Royal Exchange Assurance Co.* 2 B. & Ald. 73, 79. This view of the contract is equally applicable to the present case.

It was argued by the learned counsel for the defendants that the express exemption of liability for losses by arrest, restraint or detention tends to show the extent of the liability out of which the exception is made ; and that such risks are perils of the sea, and therefore the only risks insured against are other perils of the sea. But it is well settled that the risks thus excepted are not perils of the sea. 3 Kent Com. (6th ed.) 216. *Spence* v. *Chodwick*, 10 Q. B. 517. *The Griffin*, 4 Blatchf. C. C. 203 ; *S. C. nom. Howland* v. *Greenway*, 22 How. 502. *Gage* v. *Tirrell*, 9 Allen, 307, 310. This argument therefore turns with increased force against the defendants.

It was further argued that, if the defendants were liable for barratry at all, they were not so liable in this case, because the assured was the owner of the vessel, and as such had the appointment of the master and mariners, and was responsible for their acts. The report does not show the fact of the ownership of the vessel; but, assuming it to be as stated, we are of opinion that it is immaterial. Some of the continental writers indeed have expressed the opinion that insurers against barratry were not liable under such circumstances. But the law of England and America recognizes no such implied exception. *Havelock* v. *Hancill*, 3 T. R. 277. *Wilson* v. *General Mutual Insurance Co.* 12 Cush. 362. And the general tendency of the modern decisions is, not to hold the owner, who has complied with the warranty of seaworthiness, responsible for the negligence of master or crew upon the voyage. *Nelson* v. *Suffolk Insurance Co.* 8 Cush. 496, and cases cited.

It was argued that such an exception should be implied in this contract, because the Boston policies contain in the clause of barratry an express exception, " unless the assured is owner of the vessel." But no evidence had been offered of any usage to insert such an exception in the port of Gloucester or any other port in the Commonwealth; and such a usage is not to be inferred without clear proof. *Macy* v. *Whaling Insurance Co.* 9 Met. 365, 366. *Rogers* v. *Mechanics' Insurance Co.* 1 Story, 603. Even an express exception in a policy is to be construed against the underwriters, by whom the policy is framed, and for whose benefit the exception is introduced. *Palmer* v. *Warren Insurance Co.* 1 Story, 364. *Dole* v. *New England Insurance Co.* 6 Allen, 385. This rule of construction applies more strongly when an exception from the ordinary marine risks is sought to be implied without any words to support it.

The court is therefore of opinion that upon the case reported there must be *Judgment for the plaintiff.*

*R. H. Dana, Jr., & L. S. Dabney,* for the plaintiff.

*T. H. Sweetser & C. P. Thompson,* for the defendants.