STANDARD ELECTRIC SUPPLY COMPANY, INC. *vs.* NORFOLK AND DEDHAM MUTUAL FIRE INSURANCE COMPANY.

Middlesex.    January 17, 1973. — February 21, 1974.

Present: ROSE, GOODMAN, & ARMSTRONG, JJ.

*Insurance,* Water damage, "All risk" policy.

An insurance policy against "all risks of physical loss" with respect to personal property of the insured, excluding, among other things, "loss caused by, or] resulting from . . . water below the surface of the ground including that which . . . flows, seeps or leaks through . . . foundations, walls, basement or other floors," covered damage to personal property of the insured in the basement of its premises occurring when a water pipe in the basement of adjacent premises burst and water collected therein escaped through its foundation walls and floor, "through the ground," and into the basement of the insured's premises through its foundation walls and floor. [763-768]

CONTRACT.    Writ in the Superior Court dated February 9, 1968.

The case was heard by *Moriarty, J.*

*Richard A. Gelerman* for the plaintiff.

*Stephen J. Paris* for the defendant.

GOODMAN, J.    In this action of contract the plaintiff seeks to recover on an insurance policy covering damage to personal property. The case comes to us on an appeal by the plaintiff from an order on a statement of agreed facts allowing the motion of the defendant insurer for summary judgment and denying the plaintiff's motion for summary

judgment. See *New Amsterdam Cas. Co.* v. *Goldstein,* 352 Mass. 492 (1967).

As set out in the agreed facts, the damage to the plaintiff's property occurred "sometime over the Labor Day weekend of 1967, [when] a 1½ inch water pipe in the basement of the . . . premises [adjacent to those of the plaintiff] burst. Some of the water which collected in the cellar of the next door premises escaped through its foundation walls and foundation floor, and through the ground, and then into the basement of the insured's premises thru its foundation walls and/or foundation floor causing water damages to the insured's contents within in the amount of $6,760.00." "These next door premises contain a building which is approximately 8 feet from the building of the insured's premises and the cellar depth of the insured's premises is 3 to 3½ feet deeper than that of the next door premises."

The insurance policy then in effect "insure[d] against all risks of physical loss" and contained various exclusions.[1] The defendant interprets paragraph B3 to exclude damage from water which has come through the ground, regardless of the source of the water. The plaintiff argues that the exclusion does not refer to water damage caused by a broken pipe. We agree with the plaintiff.

Loss from the bursting of a pipe on the premises of another would seem to be the kind of "fortuitous loss" which is "not usually covered under other insurance" and against which an "all risk" policy is designed to extend protection. Couch, Insurance (2d ed.) § 48.138, p. 596. *C.*

---

[1] The policy states under section "VIII. EXCLUSIONS": "A. This policy does not insure under this form against loss caused by: . . . [1-12 inclusive]

"B. This policy does not insure against loss caused by, resulting from, contributed to or aggravated by any of the following:

1. flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;

2. water which backs up through sewers or drains;

3. water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors . . . ."

*H. Leavell & Co.* v. *Fireman's Fund Ins. Co.* 372 F. 2d 784, 787 (9th Cir. 1967). Richards, Insurance (5th ed.) § 212, p. 721. See *British & Foreign Marine Ins. Co. Ltd.* v. *Gaunt,* [1921] 2 A. C. 41, 46-47; *Mellon* v. *Federal Ins. Co.* 14 F. 2d 997, 1002 (S.D.N.Y. 1926); *Glassner* v. *Detroit Fire & Marine Ins. Co.* 23 Wis. 2d 532, 536-537 (1964); *Miller* v. *Boston Ins. Co.* 420 Pa. 566, 571 (1966); Gorman, All Risks of Loss v. All Loss, 34 Notre Dame Lawyer 346 (hereinafter cited as Gorman); Annot., 88 A. L. R. 2d 1124 (1963). The "risk" comprehended in an "all risk" policy has been characterized as: "a fortuitous event — a casualty" (*Mellon, supra,* p. 1004); "losses by any accidental cause . . . due to some fortuitous circumstance or casualty" (*British & Foreign Marine Ins., supra,* p. 47); "a fortuitous and extraneous happening" (*Glassner, supra,* p. 536); "fortuitous (accidental) . . ." resulting "from a fortuitous or a chance occurrence" (Gorman, *supra,* pp. 351, 355). Cases such as the *Mellon* (p. 1004), *British & Foreign Marine Ins.* (p. 57) and *Glassner* (p. 536) cases have further indicated that an "all risk" policy covers primarily casualties. Thus in the *British & Foreign Marine Ins.* case Lord Sumner said, "Accordingly the expression does not cover inherent vice or mere wear and tear or British capture. It covers a risk, not a certainty; it is something, which happens to the subject-matter from without, not the natural behaviour of that subject-matter, being what it is, in the circumstances under which it is carried. Nor is it a loss which the assured brings about by his own act, for then he has not merely exposed the goods to the chance of injury, he has injured them himself."[2]

Accordingly, such a policy presents "very serious and extremely difficult questions relating to whether an occurrence is fortuitous or natural, what is inherent or extraneous, what is wilful or accidental, and perhaps even what

---

[2] This is quoted in the *Mellon* case and by Gorman. We need not decide whether under some circumstances an "all risk" policy may go beyond the scope of the above characterizations. See *Republic Ins. Co.* v. *French,* 180 F. 2d 796 (10th Cir. 1950); Richards, Insurance (5th ed.) § 212, pp. 723-724.

1 Mass. App. Ct. 762                    765

Standard Elec. Supply Co., Inc. *v.* Norfolk & Dedham Mut. Fire Ins. Co.

is lawful and unlawful . . . ." Gorman, p. 356. An examination of the policy in this case demonstrates that it was generally these questions that the list of exclusions was intended to answer. Besides the exclusions listed in paragraph B (see n. 1), section VIII A provides that the policy "does not insure . . . against loss caused by: [e.g.] Earthquake . . . shortage of property disclosed on taking inventory . . . latent defect . . . [i]nherent vice, wear and tear . . . [a]ny fraudulent, dishonest or criminal act", etc.[3] These are not ordinarily thought to arise out of an accident. In context, therefore, it does not seem to us that (or it is at least doubtful whether) the exclusion in paragraph B3, on which the defendant relies, refers to water damage caused by an accident.[4] The interpretation of the defendant insurer which isolates the exclusion and looks only at its text — even though we were to consider it a "warranted interpretation" — cannot be said "best [to] effectuate the main manifested design of the parties . . . ." *Joseph E. Bennett Co. Inc.* v. *Fireman's Fund Ins. Co.* 344 Mass. 99, 103-104 (1962). "[C]ourts attempt to resolve insurance disputes with a view to accomplishing the purpose of the insurance." *Marston* v. *American Employers Ins. Co.* 439 F. 2d 1035, 1038 (1st Cir. 1971). See *Bulyga* v. *Underwriters at Lloyd's, London, ante,* 359, 363 ("Exclusions from coverage are to be strictly construed . . . and the doctrine is well established that any ambiguity in the language of a policy must be construed in favor of the insured. . . . [citing cases]").

The contention of the defendant is inconsistent with the well established principle that recovery on an insurance policy is allowed "where the insured risk itself set into operation a chain of causation in which the last step may

---

[3] We are, of course, not passing on the exact scope of each exclusion which may depend on the factual situation and the extent to which an ambiguity may be created.

[4] It should be noted that the policy does not exclude all water damage. For example, it includes among "specified perils" "leakage or accidental discharge from automatic sprinkler systems."

have been an excepted risk." Appleman, Insurance Law and Practice, § 3083, p. 311. See Couch, Insurance (2d ed.) § 74:706, p. 614 ("Train of events test"). In *Wyatt* v. *Northwestern Mut. Ins. Co.* 304 F. Supp. 781, 783 (D. Minn. 1969) the rule was applied to an "all risk" policy and recovery was allowed for damage resulting from earth movement, artificially caused, in spite of an exclusion for "any earth movement." The court held "that a distinction should be drawn between an excluded event which is a cause and such an event which is the inevitable result of another event" (p. 783). See also *New Zealand Ins. Co. Ltd.* v. *Lenoff,* 315 F. 2d 95 (9th Cir. 1963).

The Supreme Judicial Court has followed the same rule in applying insurance policies covering injuries solely caused by accident and with exclusions for disease, etc. *Barnett* v. *John Hancock Mut. Life Ins. Co.* 304 Mass. 564, 566-567 (1939), and cases cited. In that case, the policy insured against death "caused solely by . . . accidental means . . . independently and exclusive of all other causes"; recovery was allowed for death from pneumonia of which the accident was the proximate cause. See *Jiannetti* v. *National Fire Ins. Co.* 277 Mass. 434, 438-439 (1931); *Bulyga* v. *Underwriters at Lloyd's, London, ante,* 359. See also *Edgerton & Sons Inc.* v. *Minneapolis Fire & Marine Ins. Co.* 142 Conn. 669 (1955); *Gillis* v. *Sun Ins. Office, Ltd.* 238 Cal. App. 2d 408 (1965); *Fawcett House, Inc.* v. *Great Cent. Ins. Co.* 280 Minn. 325 (1968); *The G. R. Booth,* 171 U. S. 450, 460-461 (1898).[5]

In *McDonough* v. *Hardware Dealers Mut. Fire Ins. Co.* 448 F. 2d 870, 871 (1st Cir. 1971) — construing Massachusetts law — an exclusion identical with the one before us was held not to bar recovery under a fire insurance policy for damage caused by water which went under the ground from adjacent premises. The court said: "Most of Article V in referring to water designates water which could not

---

[5] The defendent cites a number of cases from other jurisdictions (and see also *Krug* v. *Millers' Mut. Ins. Assn.* 209 Kan. 111 [1972]). To the extent that they are not distinguishable, we decline to follow them.

conceivably have resulted from fire. That being the general tenor of the other subparagraphs, it is natural to read this inference into subparagraphs C4, having in mind that water resulting from a fire is normally within the policy. Such a reading could have been easily avoided, if a different concept was intended, by adding thereto the simple words, 'whether resulting from fire or not.' " The point is clear if we substitute the word "accident" for "fire" in that quotation. See *King* v. *Travelers Ins. Co.* 84 N. M. 550 (1973), also construing the identical exclusion in a policy insuring against accidents to a plumbing system. The court said (p. 555), "[T]he words 'water below the surface of the ground' [refer to] . . . losses . . . result[ing] from causes having no connection with the 'plumbing system.' " *Sauer* v. *General Ins. Co. of Am.* 225 Cal. App. 2d 275, 279-280 (1964) — also permitting recovery in spite of an exclusion for "water below the surface of the ground."

The insurer concedes that the *McDonough* case was properly decided because a fire insurance policy was involved and the loss was "proximately connected" with the fire. The insurer suggests that an "all risk" policy stands on a different footing, and greater emphasis must be given to the exclusions. We reject this distinction. To accept it would create the anomaly that, if the plaintiff in the *McDonough* case had been insured only under this "all risk" policy rather than a fire insurance policy the insurer would not have been liable, though this policy covers fire and water damages generally.

As long ago as *Parkhurst* v. *Gloucester Mut. Fishing Ins. Co.* 100 Mass. 301, 302, 306 (1868), the court said, "A policy of insurance against all marine risks [the forerunner of the modern "all risk" policy] . . . which underwriters usually take, is just as binding and effectual as if the risks are specified in detail . . ." and "an express exception in a policy is to be construed against the underwriters, by whom the policy is framed, and for whose benefit the exception is introduced." See *British & Foreign Marine Ins. Co. Ltd.* v. *Gaunt,* [1921] 2 A. C. 41, 57 (" 'All risks' has the same effect as if all insurable risks were separately enumerated . . .").

·

See also *Miller* v. *Boston Ins. Co.* 420 Pa. 566, 577 (1966). In *Fireman's Fund Ins. Co.* v. *Hanley,* 252 F. 2d 780, 786 (6th Cir. 1958) the court said, "We think the insurer is under at least as high an obligation to be precise and clear in drawing the policy when dealing with risks described in general terms as when the risks insured against are precisely itemized. The insured will have more difficulty in threading through the mazes of exclusions relating to a general comprehensive coverage than in properly appraising exclusions which relate to coverage of specific risks."

The order for judgment for the defendant is reversed and judgment is to be entered for the plaintiff.

*So ordered.*