[No. 52041-1.   En Banc.   October 2, 1986.]

LAWRENCE J. VILLELLA, *Appellant,* v. PUBLIC EMPLOYEES MUTUAL INSURANCE COMPANY, ET AL, *Respondents.*

*Williams, Kastner & Gibbs,* by *William E. Pierson, Jr.,* for appellant.

*Merrick, Hofstedt & Lindsey, P.S.,* by *Sidney R. Snyder, Jr.,* and *Nancy K. McCoid,* for respondent Public Employees Mutual Insurance Co.

*Lane, Powell, Moss & Miller,* by *Thomas C. Sorenson* and *Michael Runyan,* for respondent Warnock Insurance Agency.

DORE, J.—This case concerns questions of coverage under two homeowners insurance policies. In regard to the first policy we hold that the insured did not sustain a covered loss during the effective coverage period. In regard to the second homeowners policy we hold that questions of fact exist concerning whether the policy had taken effect at the time of loss and whether an insured peril was the efficient proximate cause of the loss. The trial court's grant of summary judgment for the insurer is reversed and the case remanded for further proceedings to be conducted in accordance with this opinion.

FACTS

In October 1979, Lawrence Villella purchased a new home on a hillside in Everett, Washington, from David A. Titus Construction. Villella borrowed $72,400 from Pioneer First Federal Savings and Loan Association to finance the purchase. Villella obtained a Public Employees Mutual Insurance Company (Pemco) homeowners policy, HO 094771 (policy No. 1), through Warnock Insurance on October 20, 1979.

In relevant part, policy No. 1 provided that Pemco would "insure for all risks of physical loss to the [insured dwelling] . . . except . . . losses excluded under Section 1— Exclusions . . ." The exclusion provides that Pemco does "not cover losses resulting directly or indirectly from: . . . Earth Movement." Policy No. 1 further provides that that coverage applies only to property damage which occurs during the policy period.

Villella lived in the residence until 1982, when he moved to Texas. While in Texas, Villella leased the residence with the assistance of his mother. Villella claims that he wanted to delete the contents coverage of policy No. 1 while the house was leased, and that he had his mother contact the Warnock Insurance Agency for this purpose. The Warnocks and Pemco contend that Villella actually had his mother contact the agency in order to cancel the policy and substitute a less expensive fire policy. In any event, on August 26, 1982, policy No. 1 was terminated, and Pemco issued a policy providing coverage for loss by fire. (This policy is not involved in the present dispute.)

Villella's tenant moved out, and Villella did not succeed in leasing the house again. On November 5, 1983, Pemco sent notice to Villella that the fire policy would be canceled effective December 5, 1983, because there was no tenant in the house.

On November 20, 1983, Villella's house was damaged. Villella claims that Titus Construction had negligently failed to install a proper drainage system, and that this negligence set in motion a continuous process of soil desta-

bilization which eventually resulted in the inability of the soil under his house to sustain the foundation or the house itself. The Warnocks and Pemco counter that the house was damaged by "earth movement." In either case, on November 20, 1983, the uphill side of the foundation dropped about 8 inches in relation to the downhill side, causing extensive damage to the residence.

On November 23, 1983, a Pemco insurance adjuster examined the house and told Villella that the loss was not covered by the fire policy then in effect. On December 5, 1983, that policy was canceled.

In the meantime, Villella claims, he contacted the Warnock Agency when he learned about the cancellation notice on the fire policy. He claims that the agency assured him that it would obtain a new homeowners policy from Pemco which would be effective November 11, 1983. The agency denies this claim, and asserts that the new policy (policy No. 2) went into effect on December 6, 1983. The agency notes that the application form provided that policy No. 2 would be placed in force as of December 6, 1983.

Policy No. 2 contained, in relevant part, the following "earth movement" exclusion (found in a policy endorsement):

We do not cover loss resulting directly or indirectly from:

. . .

2. *Earth Movement.* Meaning any loss caused by, resulting from, contributed to or aggravated by:
    a. earthquake, landslide, mudflow, earth sinking, rising or shifting . . .

Supplemental Clerk's Papers, at 9; Second Supplemental Clerk's Papers, at 89.

Despite the damage to the house, Villella continued to live there until April 1984. He refused, however, to make payments to Pioneer; Pioneer therefore held a nonjudicial foreclosure sale on its deed of trust.

Villella brought this suit against Pemco, the Warnock Agency and its individual members, the estate of David A.

Titus, and the City of Everett.[1] Villella claimed, among other things, that policy No. 1 covered the loss because Titus' (alleged) negligence was, during the policy period, a covered act which set in motion a continuous sequence of events culminating in the damage to the house. He claimed that policy No. 2 also covered the loss due to the (alleged) representation by the Warnock Agency that the effective date of this policy was November 11, 1983.

Pemco moved for summary judgment, arguing that there was no coverage under policy No. 1 because there was no loss during the policy period. Pemco further argued that there was no coverage under either policy because the "earth movement" exclusionary clauses in the policies validly excluded the loss from coverage. The Warnocks also moved for summary judgment, contending that, if neither Pemco policy covered the loss, any breach by the Warnocks of any duty owed to Villella could not have been the proximate cause of any loss to Villella. Villella filed a cross motion for summary judgment.

The trial court decided that policy No. 1 did not cover the loss because of the exclusionary clause, and that, even assuming that policy No. 2 was in effect on November 20, 1983, the "earth movement" exclusionary clause in policy No. 2 also precluded coverage. The trial court expressly did not reach the issue of whether there was a loss within the policy period covered by policy No. 1.

### POLICY NO. 1: TIME OF LOSS

Pemco contends that because policy No. 1 was in effect only between October 26, 1979 and August 26, 1982, the damage sustained by Villella's residence on November 20, 1983 was not a loss within the policy period. Villella argues that the alleged negligent installation of the drainage system and subsequent destabilization of the soil triggered insurance coverage during the effective period of policy No. 1 and thus provides coverage for the subsequently mani-

---

[1] Villella filed a separate lawsuit against Pioneer.

fested damage to the residence.

The first homeowners policy provides coverage only for "losses" occurring during the policy period. The policy insures against loss or physical damage to the dwelling. Although Villella's retained experts believe that improper provisions for drainage in the original construction of the residence contributed to the damage, they confirm that the residence was not damaged *prior* to November 20, 1983. Nevertheless, Villella argues that the policy covers the loss. He contends that the events leading to the damage were an ongoing process, part of which occurred during the time the first homeowners policy was in effect. Because the alleged soil destabilization occurred during the policy period, Villella claims that the policy covers the subsequent damage to the house.

In support of the proposition that coverage is provided by the first homeowners policy, Villella relies on *Gruol Constr. Co. v. Insurance Co. of North Am.,* 11 Wn. App. 632, 524 P.2d 427 (1974). In *Gruol,* the court held that where the damage complained of was a continuous process set in motion at the time of construction of a building, all three insurance companies which insured the building at various times were liable for the damage to the structure.

The *Gruol* case is distinguishable from this case, both factually and legally. *Gruol* involved an undiscovered progressively worsening condition of dry rot. The actual damage to the building was initiated at the time of construction and continued throughout the time that each of the three insurers provided coverage. The *damage* to the structure was a continuous process which increased with time. *Gruol,* at 636. Moreover, the structure was damaged by dry rot during each policy period. If at any point the dry rot had been discovered, the insured could have forced the insurer to pay for the damages.

The facts in this case are different. There was no "continuing process" of *damage* to the plaintiff's residence. The residence itself sustained no damage prior to November 20, 1983. Consequently there was no damage to the house dur-

ing the period of October 25, 1979 to August 26, 1982, when the homeowners policy was in effect. Mr. Villella could not have filed a claim during the policy period, as the *Gruol* plaintiff could have done, because there was no compensable damage during the policy period.

The requirement that damage occur during the policy period is borne out by subsequent decisions construing *Gruol*. In *Swift v. American Home Assur. Co.*, 22 Wn. App. 777, 591 P.2d 1216 (1979), the property owners recovered damages for fire losses from an insurance agent who negligently failed to issue the policy they had requested. The insurance agent argued on appeal that the insurance company was liable for the loss because the agent's negligence was "continuing in nature such that it occurred during the period of his employment". The court easily distinguished *Gruol*, stating:

> The damage in *Gruol* began with the negligent act and continued to increase in seriousness until discovered. Here, however, the damage did not occur until the parsonage burned and the Church recovered against the plaintiff.

*Swift*, at 780. More recently, in *Castle & Cook, Inc. v. Great Am. Ins. Co.*, 42 Wn. App. 508, 711 P.2d 1108 (1986), the court construed the continuous coverage rule of *Gruol* as requiring a covered injury during the effective period of the policy. *Castle & Cooke*, at 516–17.

Villella's reliance on *California Union Ins. Co. v. Landmark Ins. Co.*, 145 Cal. App. 3d 462, 193 Cal. Rptr. 461 (1983) is also misplaced. There, as in *Gruol*, the court held that a first insurer, who had been "on the risk" when the negligent act was committed *and the initial damage suffered*, was responsible not only for that damage but also for the damages that accrued after its policy expired. *California Union*, at 473–74. *See also Harbor Ins. Co. v. Central Nat'l Ins. Co.*, 165 Cal. App. 3d 1029, 211 Cal. Rptr. 902 (1985).

Villella also relies on a "triple trigger" theory in support of his contention that an ongoing process, part of which

occurred during policy coverage, provides coverage for a subsequent loss. The "triple trigger" theory was adopted in *Keene Corp. v. Insurance Co. of North Am.*, 667 F.2d 1034 (D.C. Cir. 1981), *cert. denied,* 455 U.S. 1007 (1982) to resolve questions of liability insurance coverage for injuries arising from asbestos exposure. Under that theory the occurrence of injury is a continuing process beginning with the inhalation of asbestos fibers and ending years later with the manifestation of an asbestos–related disease. Policy coverage is triggered by a claim that a victim was either exposed to asbestos products, suffered exposure in residence, or manifested an asbestos–related disease during the policy period. Any insurer whose policy was in effect at any point in this process would be jointly and severally liable for the whole of this single injury. *Keene,* at 1046. *See also Lac d'Amiante du Quebec, Ltee. v. American Home Assur. Co.,* 613 F. Supp. 1549 (D.N.J. 1985). Thus, as in the continuous damage theory applicable to property insurance, the "triple trigger" theory extends liability coverage beyond the effective date of policy coverage. Likewise, however, a prerequisite to this extension of coverage is the existence of a covered injury during the policy period. The basis of the theory is that the initial inhalation of asbestos fibers causes tissue damage and thus, a covered injury has occurred at the inception of exposure. *Keene,* at 1042–45. *See also Insurance Co. of North Am. v. Forty–Eight Insulations, Inc.,* 633 F.2d 1212, 1218 (6th Cir. 1980).

In *Forty–Eight Insulations,* the court referred to the similarities between the triple trigger theory and the *Gruol* continuing damage theory of property insurance:

> There is yet another line of cases relating to property insurance. Under these cases, latent defects in property which later cause damage do not trigger insurance coverage. *See Maples v. Aetna Casualty & Surety Co.,* 83 Cal.App.3d 641, 148 Cal.Rptr. 80 (1978); *Tijsseling v. Gen'l Accident Fire & Life Assur. Corp.,* 55 Cal.App.3d 623, 127 Cal.Rptr. 681 (1976); *Remmer v. Glens Falls Indemnity Co.,* 140 Cal.App.2d 84, 295 P.2d 19 (1956). In these cases, insurance coverage did not begin until the

defect showed itself. However, in each of these cases, no damage or injury *of any kind* took place until manifestation.

However, when courts are dealing with property damage situations where damages slowly accumulate, courts have generally applied the exposure theory. *So long as there is tangible damage,* even if minute, courts have allowed coverage from that time. *Gruol Constr. Co. v. Ins. Co. of N. America,* 11 Wash.App. 632, 524 P.2d 427 (1974).

(Some citations omitted. Some italics ours.) *Forty–Eight Insulations,* at 1222 n.18.

All of the aforementioned decisions which address triggering of insurance coverage, under either the continuous damage theory or the triple trigger theory, require that the insured sustain a covered injury or loss, however minute, during the effective period of the policy. In the instant case, Villella simply did not sustain a covered loss during the coverage period of policy No. 1.

POLICY NO. 2: EARTH MOVEMENT EXCLUSION

Villella contends that the second homeowners policy became effective prior to the date his residence sustained the damage. The Warnock Insurance Agency and Pemco contend that the policy did not become effective until December 6, 1983, after the loss had been sustained. The trial court, appropriately, did not resolve this factual question on motion for summary judgment. The trial court held however that, even assuming that policy No. 2 was in effect on November 20, 1983, the "earth movement" exclusionary clause precluded coverage. Villella contends that the earth movement exclusion clause does not exclude the loss because earth movement was not the predominant or efficient cause of the loss.

Recently, this court applied an "efficient proximate cause" analysis in determining coverage under all risk homeowners insurance policies which contained earth movement exclusion clauses. *Graham v. Public Employees Mut. Ins. Co.,* 98 Wn.2d 533, 656 P.2d 1077 (1983). In

*Graham,* several homeowners sought insurance coverage for damage to their properties which resulted from mudflows following the eruption of Mount St. Helens. The insurance companies had rejected homeowners' claims on the basis that the exclusionary clause excluded coverage for loss resulting directly or indirectly from earth movement. The exclusionary clause in *Graham* contained specific exceptions, one of which provided that "[d]irect loss by . . . explosion . . . resulting from earth movement is covered." *Graham,* at 535.

This court first agreed with the trial court that whether the movement of Mount St. Helens was an "explosion" within the terms of the policies was a factual issue to be decided by the jury. If the jury determined that the eruption was an explosion resulting from earth movement, then the question would be whether the loss to the properties was a direct result of the eruption. *Graham,* at 536. If so, then the explosion exception to the exclusion would apply and coverage would be provided.

In addressing whether the loss was a direct result of the eruption, this court held that

> [w]here a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produce the result for which recovery is sought, the insured peril is regarded as the "proximate cause" of the entire loss.
>
> It is the efficient or predominant cause which sets into motion the chain of events producing the loss which is regarded as the proximate cause, not necessarily the last act in a chain of events.

(Citations omitted.) *Graham,* at 538. Stated in another fashion, where an insured risk itself sets into operation a chain of causation in which the last step may have been an excepted risk, the excepted risk will not defeat recovery. 5 J. Appleman, *Insurance* § 3083, at 311 (1970); 18 R. Anderson, *Couch on Insurance* § 74:711, at 1020–22 (2d ed. 1983). This established insurance law principle of proximate cause is the rule in a majority of jurisdictions. *See Standard Elec. Supply Co. v. Norfolk & Dedham Mut.*

*Fire Ins. Co.,* 1 Mass. App. 762, 765–66, 307 N.E.2d 11 (1974); Note, *Autopsy of a Plain English Insurance Contract: Can Plain English Survive Proximate Cause?—Graham v. Public Employees Mut. Ins. Co., 98 Wn.2d 533, 656 P.2d 1077 (1983),* 59 Wash. L. Rev. 565, 575 (1984). In the case of all risk homeowners insurance, the peril insured against would be any peril that is not specifically excluded. This would include a building contractor's negligence in failing to provide proper drainage. *See, e.g., Essex House v. St. Paul Fire & Marine Ins. Co.,* 404 F. Supp. 978 (S.D. Ohio 1975); *Mattis v. State Farm Fire & Cas. Co.,* 118 Ill. App. 3d 612, 454 N.E.2d 1156 (1983); *Premier Ins. Co. v. Welch,* 140 Cal. App. 3d 720, 189 Cal. Rptr. 657 (1983).

Like this court in *Graham,* the California courts have applied an "efficient proximate cause" analysis in determining coverage under insurance policies which contain clauses excluding certain risks or perils. The basis of these decisions is that where there is one cause which sets other causes in motion, there is coverage for the loss if the cause which set the others in motion is an included risk under the terms of the policy. This is so even though there might be an excluded risk which also contributed to the loss or damage. *Farmers Ins. Exch. v. Adams,* 170 Cal. App. 3d 712, 216 Cal. Rptr. 287, 294 (1985); *Premier Ins. Co. v. Welch,* 140 Cal. App. 3d 720, 724–28, 189 Cal. Rptr. 657 (1983); *Sabella v. Wisler,* 59 Cal. 2d 21, 31–32, 377 P.2d 889, 27 Cal. Rptr. 689 (1963); *Brooks v. Metropolitan Life Ins. Co.,* 27 Cal. 2d 305, 309–10, 163 P.2d 689 (1945).

Similar to the instant action, *Sabella* concerned an action by property owners against their insurer for recovery under a policy insuring against all physical loss. Among other things, the policy excluded loss by settling, cracking and shrinkage. The home in *Sabella* had been built upon filled land. Although the builder was an experienced contractor, he failed to discover the filled nature of the ground or to have tests performed upon the land which might reveal the soil conditions. As a result of the builder's negligence, the sewer line developed a leak and waste water infiltrated the

unstable soil causing subsidence damage to the insureds' house. The trial court concluded that the insurer was exempt from liability because the cause of the loss was "settling," an excluded risk. The Supreme Court reversed, holding there was coverage because the rupture of the sewer line, attributable to the negligence of a third party, rather than settling, was the efficient proximate cause of the loss. *Sabella,* at 30–34.

Despite the fact that an insured peril may have been the efficient proximate cause of Villella's loss, Pemco contends that the earth movement exclusion contained in policy No. 2 precludes recovery. This argument is premised on the definition of earth movement exclusion as any loss *contributed to or aggravated by* earth sinking, rising, or shifting. Thus, Pemco argues that if earth movement contributed to the loss, regardless how slight in degree, coverage is precluded.

This same argument has been raised and rejected in those jurisdictions which have adopted the "efficient proximate cause" rule of insurance coverage. In *Sauer v. General Ins. Co. of Am.,* 225 Cal. App. 2d 275, 37 Cal. Rptr. 303 (1964) the insured residence was extensively damaged when leaking water pipes underneath the residence caused the earth to become saturated and sink, which in turn caused the foundation to settle. The trial court ruled that an earth movement exclusion, virtually identical to that found in policy No. 2, excluded coverage. The trial court reasoned that "while the loss claimed was not caused by or resulting from the settling of the ground, such loss was contributed to and aggravated by the earth sinking following the water leak." *Sauer,* at 277. The Court of Appeals reversed, holding that the analysis set forth in *Sabella* was controlling. The efficient proximate cause of the loss was the leakage and discharge of water from the faulty plumbing system rather than the contribution or aggravation by earth movement. *Sauer,* at 278–80.

The insurer in *Premier Ins. Co. v. Welch,* 140 Cal. App. 3d 720, 189 Cal. Rptr. 657 (1983) brought a declaratory

relief action under an all risk homeowners policy when property owned by its insured was damaged by a landslide after a heavy rainfall. The all risk homeowners policy in *Welch* insured against all physical loss to the property, but excluded coverage for losses caused by, resulting from, contributed to or aggravated by flood, subsurface water, water which backs up through sewers or drains, or subsurface or groundwater. The insured's home was built upon filled land. Below the fill was a drainage system consisting of several layers of gravel and a perforated drainpipe. The system emptied into a hillside below. During heavy rains, the fill became saturated, causing the movement which damaged the insured's house. The stipulation of facts before the trial court provided that the subdrain, intended to release subsurface waters, was damaged. As a result its drainage capacity was impeded and the fill became saturated, causing the structural damage. The damage to the subdrain was caused by the negligence of a third party; the most probable party being the contractor. It was determined that the loss to the insureds would not have occurred if the subdrain had not been damaged. The Court of Appeals held that the immediate or proximate cause of loss was the damage to the drainage system which set in motion the chain of events leading to the ultimate loss. Coverage was found to exist even though the loss was contributed to or aggravated by subsurface water or water which had backed up through the drainage system. *Welch,* at 725.

Finally, in *Farmers Ins. Exch. v. Adams,* 170 Cal. App. 3d 712, 216 Cal. Rptr. 287 (1985), the insureds had all risk policies which enumerated various exclusions from coverage including "'losses caused by, resulting from, contributed to, aggravated by, or caused indirectly or directly by any earth movement, water damage, or enforcement of ordinance or law.'" *Adams,* at 715. As a result of a heavy storm the insureds experienced damage to their homes caused by subsurface water, groundwater and earth movement conditions. The Court of Appeals affirmed the trial court's denial of the insurer's request for summary judgment upon a

finding that the storm (an insured peril) may have been an efficient proximate cause of the insureds' losses. *Adams,* at 723–24. *See also Safeco Ins. Co. of Am. v. Guyton,* 692 F.2d 551 (9th Cir. 1982) (applying California law); *Wyatt v. Northwestern Mut. Ins. Co.,* 304 F. Supp. 781 (D. Minn. 1969) (applying Minnesota law); *Mattis v. State Farm Fire & Cas. Co.,* 118 Ill. App. 3d 612, 454 N.E.2d 1156 (1983); *Standard Elec. Supply Co. v. Norfolk & Dedham Mut. Fire Ins. Co.,* 1 Mass. App. 762, 307 N.E.2d 11 (1974).

We find this authority persuasive. Here, Villella contends that the building contractor was negligent in failing to provide proper drainage around the house, and that this negligent act is the predominant or efficient proximate cause which set in motion the chain of events which produced the damage sustained by the house. This chain of events allegedly was initiated when the improperly constructed drainage system failed to channel rain and groundwater away from the residence. As a result, the soil around the foundation of the home became saturated and unstable and ultimately shifted causing the damage to the home. Although shifting of the soil (earth movement) contributed to or aggravated the loss, the alleged efficient proximate cause of the loss was the purported negligently constructed drainage system.

If the fact finder finds policy No. 2 was in effect at the time of the loss, factual questions remain as to whether an alleged negligently constructed drainage system (a covered peril) was the efficient proximate cause of the loss. If so, the earth movement exclusionary clause would *not* exclude coverage.

## ATTORNEY FEES

The final issue is whether Pemco violated the Consumer Protection Act, RCW 19.86, by denying coverage to Villella.

Villella alleges that Pemco, by denying coverage without conducting a reasonable investigation, engaged in unfair or deceptive conduct as defined in WAC 284–30–330. Villella seeks attorney fees under RCW 19.86.090, claiming that

Pemco's conduct in violation of WAC 284–30–330 is a per se violation of the Consumer Protection Act.

A per se unfair trade practice exists when a statute has been violated and such violation has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784, 719 P.2d 531 (1986). RCW 48.30.010(1) prohibits any person in the business of insurance to engage in unfair or deceptive acts or practices in the conduct of such business, as such acts or practices are defined pursuant to RCW 48.30.010(2). The Insurance Commissioner is authorized by RCW 48.30-.010(2) to promulgate regulations defining unfair or deceptive acts or practices. *See Federated Am. Ins. Co. v. Strong*, 102 Wn.2d 665, 675–76, 689 P.2d 68 (1984). Pursuant to RCW 48.30.010(2), the Insurance Commissioner promulgated WAC 284–30–330, which provides in relevant part:

> The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:
>
> . . .
>
> (4) Refusing to pay claims without conducting a reasonable investigation.

As indicated in *Strong*, however,

> WAC 284–30–300 states that the purpose of the regulation is to define certain minimum standards which, *if violated with such frequency as to indicate a general business practice,* will be deemed to constitute unfair claims settlement practices. In light of WAC 284–30–300, it is unclear whether a *single* instance of the conduct defined in WAC 284–30–330 amounts to a violation of RCW 48.30.010(1), and thereby a per se violation of the CPA.

(Some italics ours.) *Strong*, at 676. We find it unnecessary to determine whether a single violation of WAC 284–30–330 amounts to a violation of RCW 48.30.010(1), and thereby a per se violation of the Consumer Protection Act.

WAC 284–30–330 states that it is an unfair practice to refuse to pay claims without conducting a *reasonable*

investigation. We find that Pemco conducted a reasonable investigation under the circumstances of this action.

On November 23, 1983, the Pemco insurance adjuster examined the house. He concluded that the loss was not covered by the fire policy then in effect. It is not contended that the investigation was unreasonable under the fire policy, but that the investigation was unreasonable under the provisions of the second homeowners policy.

As previously indicated, questions of fact exist as to whether the second homeowners policy was in effect at the time of loss. Although Villella asserts that he was assured that the second homeowners policy would be effective on November 11, 1983, the application form providing for the second policy indicates that coverage would be placed in force as of December 6, 1983.

An insurance company violates the Consumer Protection Act if it acts without reasonable justification in handling a claim by its insured. *Safeco Ins. Co. of Am. v. JMG Restaurants, Inc.*, 37 Wn. App. 1, 11, 680 P.2d 409 (1984). A denial of coverage, although incorrect, based on reasonable conduct of the insurer does not constitute an unfair trade practice. *See Felice v. St. Paul Fire & Marine Ins. Co.*, 42 Wn. App. 352, 361, 711 P.2d 1066 (1985); *Castle & Cooke, Inc. v. Great Am. Ins. Co.*, 42 Wn. App. 508, 518, 711 P.2d 1108 (1986); *Smith v. Ohio Cas. Ins. Co.*, 37 Wn. App. 71, 74–75, 678 P.2d 829 (1984); *Miller v. Indiana Ins. Cos.*, 31 Wn. App. 475, 478–79, 642 P.2d 769 (1982).

It appears that the investigation conducted by the Pemco adjuster was done with reasonable justification that the claim was being pursued under the fire insurance policy. Under these circumstances we find no violation of the Consumer Protection Act which would support an award of attorneys' fees.

CONCLUSION

We affirm in part, reverse in part. In regard to the first homeowners policy we hold that the insured did not sustain a covered loss during the effective coverage period. In

regard to the second homeowners policy we hold that there exist questions of fact concerning whether coverage existed at the time of the loss and whether an insured peril was the efficient proximate cause of the loss.

We hold that the insured has failed to establish a violation of the Consumer Protection Act which would warrant an award of attorney fees.

The trial court's grant of summary judgment for the insurer is reversed and the case remanded for further proceedings to be conducted in accordance with the provisions of this opinion.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, PEARSON, CALLOW, GOODLOE, and DURHAM, JJ., concur.

ANDERSEN, J., concurs in the result.