## PREFERRED MUTUAL INSURANCE COMPANY

v.

## The TRAVELERS COMPANIES.

### Civil Action No. 95–11931–MAP.

United States District Court, D. Massachusetts.

Feb. 24, 1997.

Roger A. Emanuelson, Marie Cheung–Truslow, Lecomte, Emanuelson, Motejunas & Doyle, Quincy, MA, for plaintiff.

David C. Boch, Bingham, Dana & Gould, Boston, MA, Michael J. Eisele, The Travelers Indemnity Company of Illinois, Hartford, CT, for defendant.

### MEMORANDUM REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

(Docket Nos. 34 & 29)

PONSOR, District Judge.

## I. INTRODUCTION

In January, 1995, a fire broke out in the boiler room at the Kimball Towers Condominium Association ("Kimball Towers"). The resulting heat and smoke caused extensive damage throughout the building. The plaintiff, Preferred Mutual Insurance Company ("Preferred"), insured Kimball Towers under an "all risk" policy and paid for the entire loss assessed to Kimball Towers.

Defendant, Travelers Indemnity Company of Illinois ("Travelers"), also provided insurance for Kimball Towers under a "Boiler & Machinery" policy. Preferred has brought this lawsuit, contending that Travelers' policy also covered the fire loss and that Preferred is therefore entitled to reimbursement for some or all of the monies it paid.

Both parties have moved for summary judgment, each arguing that the undisputed facts require judgment in its favor. Because the exclusionary language in the "Boiler & Machinery" policy clearly relieved Travelers of any obligation to cover this loss, the court will allow Travelers' motion and order entry of judgment for the defendant.[1]

---

1. Because the exclusionary language of the Boiler and Machinery policy relieves Travelers from responsibility to cover Kimball Towers' fire relat-  ed loss, this court has denied as moot the parties' earlier cross motions for a partial judgment on

## II. FACTUAL BACKGROUND

On January 20, 1995, a fire in the boiler room of the Kimball Towers condominium complex caused heat and smoke damage throughout the building. Preferred recognized its liability, adjusted the loss, and paid $357,278.99 in complete satisfaction of Kimball Towers' claim. Preferred subsequently demanded that Travelers, make a partial reimbursement in accordance with Travelers' "Boiler & Machinery" insurance contract with Kimball Towers. Travelers rejected Preferred's demand and this suit followed.

The precise origin of the fire is disputed. However, for the purposes of these motions the court accepts Preferred's version of events. Preferred contends that a faulty seal on a mechanical fuel pump attached to the burner leaked oil. This fuel pump was manufactured by a different company from the other parts of the burner and was attached to the burner by screws.

The oil leaking from the fuel pump entered the burner tube, which attached the oil burner to the boiler. This fuel then ignited. The resulting fire destroyed the oil burner, and it fell away from the burner tube. The separation of the burner tube from the oil burner severed a fuel line and allowed the fire to escape from the burner. The fire was then fed by the broken fuel line and burned for several hours causing extensive damage to the condominium building.

## III. STANDARD OF REVIEW

Summary judgment is appropriate only "... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A disputed fact is genuinely at issue if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 352 (1st Cir.1992) (*quoting United States v. One Parcel of Real Property, Etc.,* 960 F.2d 200, 204 (1st Cir.1992)). A fact is material if it

the pleadings regarding the proper apportion-

"carries with it the potential to affect the outcome of the suit under the applicable law." *One National Bank v. Antonellis,* 80 F.3d 606, 608 (1st Cir.1996) (*quoting Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993)).

## IV. DISCUSSION

After accepting the facts as Preferred offers them, the only issue before the court is the proper interpretation of Travelers' Boiler and Machinery insurance contract with Kimball Towers.

As an initial matter, defendant argues that its policy does not apply because its general coverage provision limits Travelers' responsibility to losses resulting from "direct damage" and that the fire in question does not constitute "direct damage." The policy, however, offers no definition of "direct damage." Given this uncertainty, the court will rely on Travelers' alternate argument to preclude application of the policy. The following discussion, therefore, assumes the general application of the policy and instead focuses on Travelers' more persuasive contention: namely, that the policy's fire exclusion clause effectively exempts Travelers from any obligation to cover the Kimball Towers loss.

### A. Travelers' Fire Exclusions

Massachusetts generally recognizes a "chain of events" rule that permits plaintiffs to recover for an excluded loss if the efficient proximate cause of that loss was covered. *Jussim v. Massachusetts Bay Ins. Co.,* 415 Mass. 24, 26–30, 610 N.E.2d 954 (1993); *Standard Elec. Supply Co. v. Norfolk & Dedham Mut. Fire Ins. Co.,* 1 Mass.App.Ct. 762, 765–766, 307 N.E.2d 11 (1973). The Supreme Judicial Court in *Jussim,* however, suggested language that, if adopted by an insurer, would foreclose the application of the "chain of events" rule and effectively exclude a certain type of loss.

The *Jussim* court suggested that to exclude a loss that might result from a chain of events, the insurer could state that the policy does not apply to losses resulting "directly or indirectly" from a particular proximate cause

ment of costs between Travelers and Preferred.

(in *Jussim,* a release of contaminants) and that "such [a] loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." *Id.* at 30–31, 610 N.E.2d 954.

■ The preamble to Travelers' fire exclusion clause adopts the language suggested by *Jussim* virtually verbatim and applies it to fires. The effect of this language is that the "chain of events" rule is avoided and liability for the fire loss in this case is effectively excluded without regard to the efficient proximate cause of the fire. The key section in the Travelers' policy entitled "Exclusions" states that Travelers will not pay for loss or damage caused "directly or indirectly" for any of the reasons specified "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." The fire-related exclusion, listed thereafter in subsection B.4(a), reads:

> Loss caused by or resulting from:
>
> a. Fire *or* combustion explosion that occurs at the same time as an "accident" or that ensues from an "accident." With respect to any electrical equipment forming a part of an "object," this exclusion is changed to read:
>
> Fire or explosion outside the "object" that occurs at the same time as an "accident" or ensues from an "accident."

The clear intent of these two paragraphs is to distinguish between exclusions related to fire in two different circumstances.

First, damage caused by a fire that occurs at the same time as, or ensues from, an "accident" will not be covered. An "accident" is defined in the policy as "a sudden and accidental breakdown of the 'object' or a part of the 'object.'" "Object" is defined as "any boiler, including its piping and accessory equipment."

Combining this language makes the policy's intent reasonably clear: damage caused by a fire that occurs at the same time as, or ensues from, a sudden and accidental breakdown of any boiler or part of the boiler (including its piping and accessory equipment) is excluded from coverage under the policy.

■ Second, with respect to any *electrical* equipment forming part of an "object," coverage will be excluded for any fire or explosion that occurs *outside* the "object." That is to say, Travelers is not required to pay for any damage outside the boiler, its piping or accessory parts, caused by a fire that occurs as a result of a sudden or accidental breakdown of any electrical equipment forming part of the boiler, its piping or accessory parts.

Since this fire did not occur as a result of the failure of any *electrical* equipment, the first sentence of paragraph B.4(a) controls. The undisputed facts establish that the Kimball Towers fire broke out as a result of the accidental breakdown of the fuel pump, an independent "part of the boiler." This fuel pump was manufactured by a different company from the other components of the oil burner and was attached to the oil burner by screws. The faulty seal on the fuel pump is the only equipment alleged to have malfunctioned, and therefore the fuel pump is the "part" of the boiler and its accessory equipment relevant to this court's analysis. Since this "part" of the "object" was in no way electrical, the flat exclusion covering damage from a fire that occurs at the same time as, or ensues from, the sudden or accidental breakdown of a part of the boiler (here, the non-electrical fuel pump) applies and Travelers must prevail.

Preferred attempts to argue that the relevant "part," whose sudden and accidental breakdown caused the fire, was the oil burner, which both parties agree happened to have some electrical components not implicated in the loss. This effort is a noble attempt, but it fails for two reasons. First, the argument twists the language of the policy out of any reasonable construction. It arbitrarily ignores the fact that the fuel pump is a "part of the boiler." Second, Preferred's argument disregards the facts of the case, particularly the fact that the fuel pump has all the characteristics of a discrete part, being manufactured independently and screwed on to the oil burner separately.

In short, the fuel pump was the relevant part of the "object." Its breakdown was the "accident." The ensuing fire was not cov-

ered by Travelers' Boiler and Machinery policy.

Moreover, even if the court agreed with Preferred that the fire here occurred as a result of a sudden and accidental breakdown (*i.e.*, an "accident" under the policy) of some *electrical* equipment forming part of an "object" (*i.e.*, the boiler, its piping and accessory equipment), Travelers would still prevail, because the second paragraph excludes coverage for any fire that occurs outside the "object." In other words, the second paragraph of subsection B.4(a) itself excludes coverage for a fire that occurs outside the boiler, its piping or accessory equipment—as this fire most assuredly did.

Preferred construes the second paragraph of B.4(a) to mean that where a fire results from the breakdown of an electrical component, then coverage is excluded only when the fire *originates* outside the boiler, its piping or accessory components. According to plaintiff's logic, which the court has rejected, the breakdown of electrical equipment caused a fire that did not originate *outside* the "object"; therefore, the damages that Kimball Towers suffered as a result of the fire spreading from *inside* the "object" to the condominium premises were covered. Citing a 75–year–old case from the Supreme Court of Iowa, *First Nat. Bank of Boone v. Royal Indem. Co.*, 193 Iowa 221, 186 N.W. 934 (1922), as authority, Preferred argues that the fire exclusion (in the case of fires caused by electrical malfunction) only denies coverage for damages resulting from "hostile fires," which Preferred interprets to mean fires originating outside the insured object.

Again, this argument suffers from two problems. First, the policy language does not support it. Subsection B.4(a) does not use the word "originate." Damages for a fire "that occurs" outside the "object"—in contrast, for example, to a fire which injures the innards of the "object" itself—are not covered, period. The policy language could hardly be clearer. Second, the law regarding what constitutes a "hostile fire" does not favor Preferred. Although the issue is not crystal clear, it would appear that a fire need only burn outside its intended confines to be "hostile." *See Way v. Abington Mutual Fire*

*Insurance Co.*, 166 Mass. 67, 43 N.E. 1032, 1033 (1896) (a flame extending into a chimney is hostile). The limited case law commenting on what constitutes a "hostile" fire is unsettled. *Compare Wasserman v. Caledonian–American Insurance Co.*, 326 Mass. 518, 95 N.E.2d 547, 549, (1950) (fire in intended place under boiler is not "hostile") *with Giambalvo v. Phoenix Insurance Co. of Hartford Conn.*, 178 Misc. 887, 36 N.Y.S.2d 598, 599–600 (N.Y.C.Ct.1942) (external fire caused by oil leak is "hostile").

In any event, Travelers prevails under either paragraph, although the first clearly controls.

*B. Reasonable Expectations Doctrine*

■ Preferred makes a final argument that the reasonable expectations doctrine in Massachusetts law requires that Travelers' fire exclusion clause not be given full effect.

Massachusetts recognizes that it is appropriate to consider what "an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Hazen Paper Co. v. U.S. Fidelity and Guaranty Company*, 407 Mass. 689, 700, 555 N.E.2d 576 (1990) (*citing Home Indem. Ins. Co. v. Merchants Distributors, Inc.*, 396 Mass. 103, 107, 483 N.E.2d 1099 (1985)). In light of this, Preferred argues that the expectations of the insured should govern even if contradicted by technical policy exclusions in this case.

■ However, a plaintiff cannot prevail by simply claiming the expectation coverage. *Mitcheson v. Izdepski*, 32 Mass.App.Ct. 903, 585 N.E.2d 743, 745–746 (1992). Without some factual basis supporting the expectation, such as evidence of an insurer's representations, the doctrine of reasonable expectations is of no avail. *Davenport Peters Company v. Royal Globe Insurance Co.*, 490 F.Supp. 286, 291–292 (D.Mass.1980).

Plaintiff's only meaningful evidence offered to support its assertion of the insured's expectations is an affidavit from one of the financial managers of Kimball Towers, in which the manager attests to his "understanding and expectation" that a fire originating in the boiler would be covered. This,

however, is evidence of only a subjective expectation. This court must turn to the language of the exclusion itself to determine if an objectively reasonable insured would expect such a fire to be covered. Since the language of the first sentence of B(4)(a) is unambiguous in its exclusion of fire damage, an objectively reasonable insured could not assume the exclusion did not apply. Therefore, the doctrine of reasonable expectations is of no aid to the plaintiff.

This position is supported by the context in which defendant's policy was executed. Preferred's all-risk policy provided protection against fire risks associated with the operation of boilers and machinery; it did not, however, cover boiler and machinery breakdowns. The First Circuit has observed that it is unreasonable to assume sophisticated policyholders intend to purchase duplicate coverage. *Commercial Insurance Co. v. Walbrook Insurance Co. Ltd.*, 7 F.3d 1047, 1052 (1st Cir.1993). Conversely, it is reasonable to assume that sophisticated policyholders intend to supplement their insurance where it is lacking. The plain meaning of Travelers' fire exclusion requires that this court conclude that this is all that Kimball Towers did when it contracted with Travelers.

### V. CONCLUSION

As noted above, the only issue before the court is the proper construction of the insurance policy, a question that may be decided as a matter of law. *Commercial Union Insurance Co.*, 7 F.3d at 1050.

The plain language of the first sentence of section B(4)a of the Travelers' policy excludes the entire fire loss alleged by Preferred. Therefore, Preferred's Motion for Summary Judgment is DENIED and Travelers' Motion for Summary Judgment is ALLOWED.