EMO R. SCHIAPPA, JR. *vs.* NATIONAL MARINE
UNDERWRITERS, INC.

No. 99-P-1239.

Plymouth. February 5, 2002. - September 30, 2002.

Present: GREENBERG, KAPLAN, & GRASSO, JJ.

*Insurance,* "All risk" policy, Marine insurance, Coverage, Construction of
policy. *Contract,* Insurance, Marine insurance.

The theft of parts from an insured's boat by an unknown person constituted
"damage" for which the insured could recover under an "all risk" policy
of insurance, notwithstanding the exclusion contained in the policy for loss
"due to conversion, embezzlement, or secretion," where the plain language
of the policy extended coverage for "missing parts" that were "presumed
stolen," and where the insured reasonably expected that theft was the kind
of fortuitous loss that would be covered under an "all risk" policy.
[162-165]

CIVIL ACTION commenced in the Wareham Division of the
District Court Department on December 19, 1995.

The case was heard by *Michael C. Creedon*, J., on motions
for summary judgment.

*Leonard M. Bello* for the plaintiff.

*William T. Bogaert* for the defendant.

GREENBERG, J. This contract action was brought by Emo R.
Schiappa, Jr., whose insurer, National Marine Underwriters, Inc.
(National Marine), failed to pay a claim under a so-called "all
risk" contract of insurance. See *Standard Elec. Supply Co.* v.
*Norfolk & Dedham Mut. Fire Ins. Co.*, 1 Mass. App. Ct. 762,
763-768 (1973); *Mellon* v. *Hingham Mut. Fire Ins. Co.*, 19
Mass. App. Ct. 933, 934-935 (1984). After a hearing on the par-
ties' cross motions for summary judgment, a District Court
judge granted National Marine's motion, and judgment entered

in its favor.[1] A panel of the Appellate Division of the District Court subsequently affirmed. Schiappa now appeals. We reverse.

The material facts are not disputed. In 1989, Tiger Marine (Tiger) sold a Checkmate Convicor speedboat to Schiappa. He purchased the instant policy to cover the boat, and it was in effect in November, 1991. At that time, Schiappa contracted with Tiger to leave his boat at Tiger's boatyard for the installation of a new, more powerful engine and to find a buyer for the used one. Not much occurred during the winter months, but Schiappa did hear from Tiger that a buyer for his old engine had been found. In the summer of 1992, Schiappa discovered that his boat, still stored at Tiger's boatyard, had been "stripped" of most of its parts.[2]

Schiappa does not argue that Tiger converted the boat; rather, he argues that the theft of various parts by Tiger's employees or a third person or persons amounted to larceny and that coverage for theft is available under the policy. National Marine lays stress on an exclusion in Schiappa's policy that reads, in relevant part, "There is no coverage under any section of this policy if the unsecured yacht . . . [sustains damage d]ue to conversion, embezzlement, or secretion." In rejecting the plaintiff's theory and giving effect to the exclusionary language in the policy, the motion judge and the Appellate Division recognized the technical common-law distinctions between "theft" and "conversion."[3]

That the parts may have been stolen would not defeat, but rather support recovery, as borne out by the detailed language

[1]After the District Court's ruling, Schiappa and National Marine stipulated to a dismissal without prejudice of Schiappa's ancillary claims under G. L. c. 93A and G. L. c. 176D.

[2]In a separate action, Schiappa sued Tiger for the damage to his boat. A judgment entered for Schiappa in that suit, including a finding that the appraised value of his boat was $26,000. When combined with attorneys's fees assessed under G. L. c. 93A, the damages amounted to almost $40,000. The judge in that case also found that Tiger's acts in failing to secure Schiappa's boat were knowing and wilful, thereby tripling the total judgment to over $100,000. Tiger has since undertaken a name change (to Tiger Electrical Services, Inc.) and apparently is bankrupt, and Schiappa has pursued this claim against National Marine.

[3]In affirming the judgment and rejecting Schiappa's arguments, the Appellate Division held that the "conversion" exclusion applied, stating as follows:

of the policy that we have quoted. As we have noted, the policy has an exclusion for loss "due to conversion, embezzlement, or secretion," which is for the insurer to prove. *Ratner* v. *Canadian Universal Ins. Co.*, 359 Mass. 375, 381 (1971). The exclusionary clause contemplates tortious abstraction of the boat proper, as where a bailee might secrete the entire boat, or embezzle or convert it.[4] Of course, "conversion" is a loose term and in its broadest signification might extend even to physical damage to the boat, but such a reading of the term would also contradict the basic coverage of the policy.

We view the case in simpler terms. The plain language of the policy and the reasonable expectations of the insured may be taken into account in construing the insurance contract. See *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 280-282 (1997). However, they are not decisive. See *Aguiar* v. *Generali Assicurazioni Ins. Co.*, 47 Mass. App. Ct. 687, 690-691 (1999); *County of Barnstable* v. *American Fin. Corp.*, 51 Mass. App. Ct. 213, 215, 217-218 (2001).

In construing "all risk" policies of insurance, "[t]he 'risk' comprehended [in such policy] has been characterized as: 'a fortuitous event — a casualty.' " *Standard Elec. Supply Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.*, 1 Mass. App. Ct. at 764 (citation omitted). See *Bettigole* v. *American Employers Ins. Co.*, 30 Mass. App. Ct. 272, 274 (1991). That type of protection extends to the kind of loss that is not usually covered under other insurance. See *H.R.G. Dev. Corp.* v. *Graphic Arts Mut. Ins. Co.*, 26 Mass. App. Ct. 374, 376 & n.3 (1988). See Gorman, All Risks of Loss v. All Loss: An Examination of Broad Form Insurance Coverages, 34 Notre Dame Law. 346, 353 (1959); Kelton & Widiss, Insurance Law § 5.1(b)(1), at 462-

---

"The difficulty with plaintiff's argument is that although all thefts encompass the elements of conversion all conversions do not encompass the elements of theft. . . . Therefor [*sic*], an insurance policy which provides coverage for theft of the plaintiff's boat while excluding coverage for conversion of the boat is not illusory, as although it allows an insurer to deny coverage for conversion of the vessel, it does not allow an insurer to deny coverage for theft of the vessel."

[4]The insured himself could not recover if he was guilty of the abstraction.

463 (1988); Freedman, Richards on Insurance § 5:6, at 369-370 (6th ed. 1990); 1 Holmes, Appleman on Insurance 2d § 1.6, at 41-43 (1996).

In this case, not only is there no doubt that removal of parts of the boat is a "fortuitous loss" as that term has been defined, but it is also evident that other language contained in National Marine's policy extends coverage for the damage to Schiappa's boat:

> "We may pay for loss in money or we may also repair or replace damaged or *missing parts* with parts of like kind or quality. If those parts are unavailable we will pay for the loss of those parts in money, at their current market value. Before we pay for or replace property stolen or *presumed stolen*, we may return it to you, with payment for any physical damage, less the applicable deductible . . . . If your insured yacht is stolen or *presumed stolen* and is not found, we will pay for the loss, less the applicable deductible, or at our option, replace the insured yacht with one of like kind and quality, less the applicable deductible. . . ."

(Emphasis added.) This language, incident to the policy's "all risk" statement of coverage, encompasses the situation here, and Schiappa carried his burden by showing that he discovered his boat "stripped" — that there were "missing parts" that he "presumed [were] stolen" while the boat was in Tiger's custody. See *Tumblin* v. *American Ins. Co.*, 344 Mass. 318, 320 (1962).

Our reading of the "missing parts" clause, in conjunction with the "all risk" statement of coverage, brings a measure of harmony to the policy as a whole. The wrongs to which the policy extends are those which cause damage to the boat, as well as theft of parts and the theft of the entire craft. Although the record below is less informative than one might wish, Schiappa's summary judgment materials did provide an acceptable basis for us to conclude that significant parts of his boat were "missing." For its part, National Marine filed almost nothing to support its position, and the record contains no admissible evidence that would unsettle a conclusion in favor of coverage. Consequently, there were no genuine issues of material fact in dispute.

To the extent that any ambiguity is created in the differing interpretation of the policy posed by the Appellate Division and National Marine, such that it would require proof of both "theft" and "conversion," we need not reach the question of whether the formal elements of a "theft" were proven in this case. Compare *Bloom* v. *Ohio Farmers Ins. Co.*, 255 Mass. 528, 530 (1926); *Farnum* v. *Bankers & Shippers Ins. Co.*, 281 Mass. 364, 368 (1937); *Rich* v. *United Mut. Fire Ins. Co.*, 328 Mass. 133, 134 (1951); *Swift* v *American Univ. Ins. Co.*, 349 Mass. 637, 640-641 (1965). Instead, the "missing parts" clause refers to coverage for "missing parts" that are "presumed stolen," and Schiappa makes a similar point by noting that an analogous situation would occur if his boat had mysteriously disappeared. "Because recovery under an 'all-risks' policy generally requires only that the insured show that a fortuitous loss has occurred, in the case of a mysterious disappearance, a showing that loss has occurred is generally sufficient, although the insured may also be required to furnish a good faith explanation." 10 Couch, Insurance § 151:36 (3d ed. 1998). See *Atlantic Lines Ltd.* v. *American Motorists Ins. Co.*, 547 F.2d 11, 13 (2d Cir. 1976). There is no question that the removal of parts from Schiappa's boat constituted "damage" under National Marine's policy. Indeed, if "all risk" coverage were as narrow as asserted by National Marine, such a policy would have little utility. We venture, further, that the owner of a pleasure boat would be astonished and confounded to learn that "all risk" insurance would not cover the situation where the craft was recovered in the disconsolate condition presented here.

The judgment is therefore reversed, and the case is remanded for entry of a judgment in favor of Schiappa.

*So ordered.*