VINCENT JIANNETTI *vs.* NATIONAL FIRE INSURANCE
COMPANY OF HARTFORD.

SAME *vs.* SCOTTISH UNION AND NATIONAL INSURANCE
COMPANY OF EDINBURGH.

Suffolk.    November 4, 1931. — December 3, 1931.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Insurance,* Fire.  *Evidence,* Presumptions and burden of proof.  *Proximate Cause.*

At the trial of an action of contract upon a fire insurance policy in the
Massachusetts standard form, for damage caused to merchandise in
the plaintiff's store by reason of a fire in an adjoining store, there
was evidence that the fire was at 2 A.M. on a Thursday; that there
was no fire in the plaintiff's premises, but that damage then was
caused to the plaintiff's stock from smoke from such fire; that members of the fire department had forced the door to the plaintiff's store
and, in the course of their duties, had removed a skylight.  Members
of the protective department testified that the skylight had been
fully replaced.  A rain storm occurred on Sunday, and on Monday
it was discovered that rain had come in through the skylight which
then was not properly in place and had damaged the plaintiff's stock.
*Held,* that
    (1) It was not the intention of the parties to the policy that the
property covered by the terms of the insurance contract must be
itself on fire when damaged;
    (2) Findings were warranted that between the fire and the rain
storm no one had displaced the skylight after it had been replaced
by members of the protective department; and that they had not
properly replaced it;
    (3) Findings were warranted that the plaintiff had sustained the
burden upon him of proving that the damage was a proximate result
of the fire; the acts of the firemen in the removal of the skylight in
the course of their duties relating to the fire were a proximate cause
of its condition at the time of the rain storm;
    (4) A finding for the plaintiff, both as to damage by smoke and
damage by water from the rain of Sunday, was warranted.

TWO ACTIONS OF CONTRACT upon policies of insurance
against fire described in the opinion.  Writs dated July 18,
1930.

In the Superior Court, the actions were tried before *Greenhalge,* J.   Material evidence, rulings by the judge and special findings by the jury are stated in the opinion. There were verdicts for the plaintiff in the sums of $678.94 and $382.82, respectively.   The defendants alleged exceptions.

*R. J. Walsh,* for the defendants.

*C. D. Driscoll,* for the plaintiff.

PIERCE, J. · These are two actions of contract brought by the plaintiff against each of the two defendants upon concurrent policies of the Massachusetts standard form (G. L. c. 175, § 99), insuring the merchandise, goods, stock in trade and fixtures of the plaintiff in the premises numbered 1678 Commonwealth Avenue, in Boston, against loss by fire for a year from December 29, 1929.   The policies were payable in case of loss to the plaintiff.   The cases were tried together, and as the issues are the same in both cases the exceptions have been consolidated.

The bill of exceptions contains all the evidence material to the issues raised.   No copy of the policies is annexed to the bill of exceptions, but the defendants, under leave reserved in the bill of exceptions, quote in their brief that portion of the policy which in the standard form of policy reads: "If the insured property shall be exposed to loss or damage by fire, the insured shall make all reasonable exertions to save and protect the same."

The record discloses the undisputed facts which follow: On February 27, 1930, the plaintiff was occupying the premises at number 1678 Commonwealth Avenue, referred to in the policies, under a written lease and was conducting a dress shop therein.   The building in which the dress shop was located was a one-story building consisting of five stores: a drug store, a tailor shop, a butcher shop, a chain store and the dress shop.   On Thursday, February 27, 1930, at about two o'clock in the morning, a fire occurred in the butcher shop located at number 1672 Commonwealth Avenue, two stores away from the plaintiff's shop, and smoke came into the premises occupied by the plaintiff.   There was no fire in the premises of the plaintiff nor any water

there from the city supply or from any source used by the fire department.

At about 2 A.M. in response to a telephone call, the plaintiff went to the dress shop with his wife, and on his arrival found there a fireman and a police officer. He further saw two or three firemen go on the roof of his shop. There was smoke in the shop when he entered and "he noticed that the skylight on the premises at 1678 Commonwealth Avenue had been removed" and that "it was off." The skylight was four feet long and two and one half feet wide, made on a metal frame with glass inserted in the frame for the purpose of giving light. There was a flange six inches deep on the skylight. There was an opening in the roof approximately four feet long and two and one half feet wide and at the outer edge of the opening in the roof and following the entire distance around it was a raised lip approximately six inches high over which the skylight fitted. When the plaintiff arrived at his shop "he found no water damage . . . but he did find some smoke damage." He "remained in the store for about one hour" and "While . . . [he] was on the premises he heard a grating noise as the skylight cover went back on," but did not pay any attention to the skylight or look at it until March 3, the Monday following February 27, 1930, when he returned to the premises.

The plaintiff's wife returned to the store on February 28, and again the next day. She saw nothing unusual about the premises except that there was some smoke; she did not look at the skylight. On Sunday, March 2, there was a rain storm. On March 3, the wife returned to the premises and found a "lot of water on the floor, a lot of water on the dress cases and a lot of water all through the dresses. There was a space under the skylight about three quarters of an inch high on the right side of the skylight as you come in the door. You could see the water dripping down." She telephoned the owner of the premises and on the same morning a contractor for the owner " 'went up on the roof and made as much noise to put it back' (the skylight). A lot of plaster came down. The water had been turned off

in the store from the date of the fire until about March 25, 1930."

Lieutenant McTernan of the Boston protective department, a witness called for the plaintiff, testified that he covered the fire and forced the rear door of the plaintiff's premises to get in; that he remained on the roof long enough to look at the skylight that the fire department had taken off; that he knew nothing about taking the skylight off but detailed three men to go up on the roof and take care of the roof, and gave them instructions to put the skylight on and cover things up. Three members of the Boston protective department, one as witness for the plaintiff and two as witnesses for the defendant, testified "that they went up on the roof of 1678 Commonwealth Avenue, that they were equipped with two lights, one being a lantern and the other being a presto light which shed a bright light. The lantern had a red globe. The presto light was a white light. The presto light was focused on the flanges of the skylight as it went on. Two of the protective department men picked up the skylight cover, one being at each end of it, and the third man guided the cover onto the flange. After the skylight had been put on it was tested by one of the members of the Boston protective department and found to be on properly." Joseph Goodstein, a witness for the plaintiff, testified "that on February 27, 1930, at about 10 o'clock in the morning, he came to the premises for the purpose of ascertaining what, if any, damage had been done to the premises in order to make a claim against certain insurance companies on behalf of . . . the owner. He went up on the roof and found that the skylight of 1678 Commonwealth Avenue was properly replaced. On Monday, March 3, . . . he went back to the premises to meet . . . the owner . . . [who] mentioned something about the party that occupied the premises saying that the skylight was not on so that water had gotten in or something. He further testified that he went on the roof and saw that the skylight was off the flange probably one and a half or two inches, and he replaced it back again."

A sworn statement of loss was filed by the plaintiff against

each company on March 31, 1930. By agreement of parties the loss was referred to three referees in accordance with the provision of the standard form of policy. The referees returned an award as follows: on item (1) stock injured by smoke, $273.74; on item (2) furniture and fixtures, $25; on item (3) stock injured by rain, $888. At the suggestion of the judge counsel figured the amounts to which the plaintiff would be entitled from each defendant, separated the amounts for smoke and rain damage so that depending on the jury's findings with respect to the rain damage a proper verdict in amount could be reached. The net amounts submitted to the jury were as follows: as against the defendant National Fire Insurance Company, smoke damage, $148.30, rain or water damage, $530.64; as against the defendant Scottish Union & National Insurance Company, smoke damage, $87.98, rain or water damage, $294.84.

The defendant in each case seasonably filed a motion for a directed verdict in its favor. These motions were denied and each defendant seasonably excepted to the said denial. The motions were denied rightly. Confessedly the smoke which was in the shop of the plaintiff on the morning of February 27, 1930, was a natural consequence of the fire in the adjacent butcher shop, and the loss, if any there was, from such smoke may properly be attributable to the smoke arising from the fire. It manifestly was not the intention of the parties to policies that the property covered by the terms of the insurance contract must be itself on fire, since losses by smoke and water where the fire has not touched the object injured are familiar to all; and it is clear that it was their intention that any loss sustained by the plaintiff by fire, in the ordinary acceptance of that term, should be covered by the policies, provided the plaintiff should prove that the loss sustained, whatever its form, was proximately caused by fire. And "When it is said that the cause to be sought is the direct and proximate cause, it is not meant that the cause or agency which is nearest in time or place to the result is necessarily to be chosen . . . . The active efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started and working actively

from a new and independent source is the direct and proximate cause." *Lynn Gas & Electric Co.* v. *Meriden Fire Ins. Co.* 158 Mass. 570, and cases cited at page 575.

A directed verdict would have been improper if, on the evidence, the jury were warranted in finding that the loss from smoke was attributable to the fire, and would not be warranted in finding that the loss from rain was a reasonable and proper consequence, directly and naturally or proximately resulting in the ordinary course of events from the happening of the fire. In the absence of authorization by statute, it is not legally possible for a jury to return a verdict for the plaintiff upon one item of alleged damage, and for the defendant upon another and distinct item of damage, both items being referable to the same cause of action.

The defendant in each action excepted to the judge's refusal to rule that the plaintiff was not entitled to recover damages "for the third item in the award," the question being raised, as the defendants allege, by the judge's refusal to rule as requested by the defendants' requests numbered 2, 3, 4, 5 and 8, and by their additional request for ruling numbered 2. As the fire was not the direct cause of the plaintiff's damages, if any, the burden was upon the plaintiff to prove that the loss, if any, was caused proximately by the fire. In their brief the defendants accept as true the testimony of the plaintiff's witnesses. By that testimony and the acceptance of it by the defendants it is established that the fire department of the city of Boston, during the fire, for some purpose connected with the fire, or for the protection of the plaintiff's premises from the fire in the adjacent premises, removed the skylight on the roof which covered the plaintiff's premises.

Notwithstanding the testimony of the members of the Boston protective department, to the effect that after the fire three of them by the order of their superior officer had put back the skylight and that it was tested by one of them and "found to be on properly," the jury could have reasonably found in view of all the circumstances that no one between the fire and the rain storm had displaced the sky-

light after it had been replaced by members of the protective department. Assuming the jury should find that the skylight had not been properly replaced, they could find correctly a proximate causal relation between the acts of the firemen in the removal of the skylight and its condition at the time of the rain storm. The presiding judge fully instructed the jury upon the aspect of the testimony last adverted to, and, among other things, said: "There are, however, questions of evidence which you must determine before you arrive at that question, because if you find . . . upon this evidence that this cover to the skylight was properly replaced that night of the fire, as testified to by several witnesses, and if it was subsequently misplaced by somebody, then this plaintiff is not entitled to recover in respect of this rain damage. If you are not satisfied by a fair preponderance of the evidence that the cover was not replaced, your verdict should be for the defendant in respect to that amount, the amount involved in the rain damage." We find no error in the refusal to give the requests and no reversible error in the charge of the judge.

We further find no error, or absence of the exercise of sound discretion, in the refusal to grant the motions for a new trial, for the reasons assigned by the defendants in their motions.

*Exceptions overruled.*