Charles W. AUTEN, Jr. and Helen
Auten, Appellants,

v.

EMPLOYERS NATIONAL INSURANCE
COMPANY, Appellee.

No. 05–85–01387–CV.

Court of Appeals of Texas,
Dallas.

Dec. 1, 1986.

Rehearing Denied Jan. 13, 1987.

Martha L. Russell, Dallas, for appellants.

Phillip W. Gilbert, Dallas, for appellee.

Before VANCE, McCLUNG, and
McCRAW, JJ.

McCLUNG, Justice.

Charles and Helen Auten sued Employers National Insurance Company to recover under an all-risks homeowner's insurance policy after a professional exterminator's misapplication of pesticides rendered their home uninhabitable. Employers defended on the ground that the Autens' loss was caused by contamination, a peril excluded by the terms of the policy. Based on the jury's findings that the misapplication of pesticides was negligent, that it caused physical loss to the Autens' home and that this loss was not caused by contamination, the trial court found that Employers was liable under the policy but only awarded the Autens their attorney's fees, apparently because the Autens had settled with the exterminator.

The Autens complain that the trial court erred in failing to award the loss in the value of their home and their increased living expenses. Employers insists that the trial court should have rendered judgment that the Autens take nothing because the evidence at trial established as a matter of law that the loss was caused by contamination. We agree with Employers because the policy excludes all losses caused by contamination regardless of the cause of the contamination. Accordingly, we reverse the judgment of the trial court and render judgment that the Autens take nothing.

## I. Facts

In the late summer of 1981, the Autens contacted an exterminating service to discuss the treatment of their master bedroom

and living room to rid these areas of carpet beetles. After discussing with the exterminator's representative the type of pesticides to be used, the Autens agreed to permit the floors and baseboards of these areas to be sprayed with a synthetic duplicate of pyrethrum, a virtually odorless insecticide naturally produced by several types of flowering plants. However, upon entering their home after the exterminator completed the treatment, the Autens immediately detected a strong chemical odor and later discovered that a stain had appeared on the carpeting beneath an upholstered chair. They also noticed that their furnishings were covered with an oily film. They telephoned the exterminator and an employee recommended steam cleaning the carpeting in the treated areas after noting that the pesticide should not have caused these problems. The Autens not only followed the employee's advice but also thoroughly cleaned and ventilated the house. Nevertheless, their efforts failed to eliminate the stain, odor or oily film.

Soon thereafter, the Autens began to experience a variety of physical afflictions ranging from hoarseness to disorders of the gastrointestinal tract. Their adult children also became ill after visiting their parents' house. Suspecting that the exterminator had used some substance other than, or in addition to, the relatively harmless synthetic pyrethrum, and fearing the effects of further exposure, the Autens vacated their home and moved in with relatives.

At trial, the evidence demonstrated that the home contained an above-normal level of Dursban, an oil-based pesticide, distributed in a manner to indicate that it had been applied by fogging rather than by spraying. Further, a physician testified that the Autens' symptoms were consistent with the effects of exposure to Dursban and that the only remedy was to eliminate exposure to the toxin. The jury apparently chose not to believe the testimony of the exterminator's employee that he did not fog the home with Dursban because it found that the exterminator applied an excessive amount of an improper pesticide in

an improper manner, which caused the Autens' loss. The sufficiency of the evidence supporting these findings is not questioned in this appeal.

### II. Contamination As A Matter of Law

■ Contamination occurs when a condition of impairment or impurity results from mixture or contact with a foreign substance. *American Casualty Co. of Reading, Pennsylvania v. Myrick,* 304 F.2d 179, 183 (5th Cir.1962); *e.g., American Produce & Vegetable Co. v. Phoenix Assurance Co. of New York,* 408 S.W.2d 954, 955–56 (Tex. Civ.App.—Dallas 1966, no writ) (when ammonia gas escaped from refrigeration system causing foodstuffs to be unfit for human consumption, the court held that the loss was not covered because of contamination exclusion). In its charge to the jury, the trial court submitted this definition of contamination.

■ There can be little doubt that Dursban was a *foreign* substance. The word "foreign" is synonymous with "inappropriate." Webster's Third New International Dictionary 889 (1981). The instructions printed on the Dursban label expressly state that it should not be applied by fogging as the evidence in this case demonstrates that it was. Thus, although Dursban may not be "inappropriate" for use in the home generally, it was certainly "inappropriate" to use it in the amount and in the manner employed by the exterminator. Neither can there be any question that the home was "impure" as the result of contact with Dursban. The expert testimony of chemists established that this toxin was deposited on surfaces throughout the home and that the Autens absorbed the chemicals through their skin by touching these surfaces. According to a testifying physician, once the active ingredient in Dursban is introduced into the bloodstream, it attacks the central nervous system causing the symptoms of which the Autens complained. We fail to see any distinction which would permit us to hold that the

deposit of Dursban in the Auten home was not contamination when it has been held that contact of food with ammonia gas and the accidental mixture of fuel oil with heptaine was contamination. *Compare McQuade v. Nationwide Mutual Fire Insurance Co.*, 587 F.Supp. 67, 68 (D.Mass. 1984) (holding that application of excessive amount of chlordane pesticide was contamination) *with Raybestos-Manhattan, Inc. v. Industrial Risk Insurers*, 289 Pa.Super.Ct. 479, 433 A.2d 906, 908 (1981) (mixture of fuel oil and heptaine); *and Myrick*, 304 F.2d at 184 (food contacting ammonia). Given the jury's findings that the misapplication of pesticides required that the Autens abandon their home and most of its contents, it necessarily follows that their loss was caused, as a matter of law, by contamination.

### III. Applicability of the Contamination Exclusion

The Autens nevertheless contend that, even though their loss may have resulted from contamination, the ultimate cause of their loss was the negligence of the exterminator. They conclude that they are entitled to recover under the all-risks policy because third-party negligence is not expressly excluded from coverage. In support of this rationale, they rely on *Safeco Insurance Co. v. Guyton*, 692 F.2d 551 (9th Cir.1982), a decision in which the court applied California law. In *Guyton*, the insureds' home was flooded after waters produced by record rains overwhelmed negligently constructed flood control measures. The insurer denied the insureds' claims, relying on flood exclusion of the all-risks policy. The Ninth Circuit held that, even though the loss was caused by flooding, the flooding itself would not have occurred in the absence of the improper methods used in building the flood control device and therefore, the insureds were entitled to recover under the policy because California law provides that, where two events of independent origin combine to create a loss that would not have occurred without both events, the insured may recover if either event constitutes an insured peril.[1] 692 F.2d at 555.

*Guyton* is clearly distinguishable from the present case. The loss in *Guyton* would not have occurred from the negligence of the builder without the intervening, fortuitous event of abnormal rainfall caused by a hurricane. In the present cause, no intervening fortuitous event was involved. The cause of the Autens' loss may be briefly summarized as follows: the exterminator's negligence caused the contamination of the Auten home which in turn caused loss in the form of their home being uninhabitable.

According to the plain language of the policy, it "does not cover ... [l]oss caused by ... contamination." Relying on the axiom that exclusions from all-risks policies are to be construed narrowly and in favor of the insured, the Autens contend that we should circumvent the language excluding contamination from the types of risks insured by fixing "cause" of the loss as the cause of the *contamination* rather than the cause of the loss. This we are not at liberty to do.

> Although contracts of insurance are said to be construed strictly in favor of the insured, nevertheless they are to be construed generally as other contracts, in that unambiguous words and phrases are to be taken in their ordinary meaning unless there is something in the contract that would indicate a contrary intention.

*Employers Mutual Casualty Company of Des Moines, Iowa v. Nelson*, 361 S.W.2d 704, 709 (Tex.1962). It is plain that the parties intended to exclude all losses occasioned by contamination without regard to the cause of the contamination. To adopt the Autens' reading of the policy would limit this provision to exclude recovery for

---

**1.** We note that this rule is contrary to that applied in Texas. It appears well-settled that, in Texas, recovery would not be permitted if either event constituted an excluded peril. *See Travel-* *ers Indemnity Co. v. McKillip*, 469 S.W.2d 160, 162 (Tex.1971); *Cox v. Queen Insurance Company of America*, 370 S.W.2d 206 (Tex.Civ.App.— San Antonio 1963, writ ref'd n.r.e.).

contamination only when the contamination itself was not the result of an excluded cause. Moreover, to do so would violate the rule that insurance contracts should not be construed to render one of its terms meaningless when it is possible to construe those terms in a manner that would give meaning to all terms of the contract. *See Blaylock v. American Guarantee Bank Liability Insurance Co.*, 632 S.W.2d 719, 722 (Tex.1982).

An analogous argument was raised in *General Insurance Co. of America v. Hallmark*, 575 S.W.2d 134 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.), in which a leaking pipe in the foundation of a home caused the ground to swell and shift the foundation which in turn caused damage to the dwelling. The insured contended that even though the policy excluded the cause of the damage to the home, the movement of the foundation, the insurer was liable nevertheless because the cause of the movement of the foundation was an insured peril. The court rejected this argument by holding that the cause of the movement of the foundation was immaterial because foundation movement, regardless of cause, was an excluded hazard.

Similarly, we decline to limit the contamination exclusion only to contamination which results from otherwise excluded causes. Indeed, to read the policy in the manner requested by the Autens could lead to creating coverage simply by looking so far down the chain of causation as may be necessary to find a cause which was not excluded. Therefore, we hold that when, as here, the loss results solely from contamination, then the clause excluding these losses is applicable regardless of the cause of the contamination. Because we have determined that the policy does not cover the Autens' loss, we need not address their points of error complaining of the trial court's failure to award recovery for certain damages. The judgment of the trial court is reversed and judgment rendered that the Autens take nothing.