ESTELLE JUSSIM & another[1] *vs.* MASSACHUSETTS BAY
INSURANCE COMPANY.

Hampden. March 1, 1993. - April 15, 1993.

Present: LIACOS. C.J.. NOLAN, LYNCH, O'CONNOR, & GREANEY. JJ.

*Insurance*, Homeowner's insurance, Coverage, Construction of policy, Pollution exclusion clause.

Discussion of decisions considering insurance coverage controversies in cases involving a chain of events leading to a loss. [26-30]

In an action for a declaratory judgment, brought by insureds under a homeowner's policy against the insurer, summary judgment was correctly entered for the plaintiffs where the parties agreed that the chain of causation leading to the plaintiffs' loss from the underground migration of fuel oil from adjoining property was set in operation by one or more negligent acts that were insured risks, notwithstanding a pollution exclusion clause. [30]

In an action seeking declaratory judgment brought by insureds against their insurer seeking to establish coverage under a homeowner's policy, neither the "acts and decisions" exclusion nor the "faulty design" exclusion, nor any public policy concern, precluded coverage under the policy as written on the facts stipulated by the parties. [30-31]

CIVIL ACTION commenced in the Superior Court Department on January 4, 1989.

The case was heard by *William W. Simons*, J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Allen R. Miller* (*John N. Love* with him) for the defendant.

*Charles W. Danis, Jr.*, for the plaintiffs.

[1]Elizabeth M. Linquist-Cock.

*Stephen D. Marcus & Mark J. Seplak* of Illinois, & *Richard L. Neumeier,* for Insurance Environmental Litigation Association, amicus curiae, submitted a brief.

GREANEY, J. We granted the defendant's application for further appellate review in this case to decide whether the plaintiffs are entitled to coverage under their homeowner's insurance policy issued by the defendant for damages incurred when home heating oil migrated onto the plaintiffs' property after the oil was negligently spilled at a neighbor's house.[2] We conclude that the policy covered the event.

The case arose through the plaintiffs' action in the Superior Court seeking a declaration that they were entitled to coverage under the defendant's policy for their damages. In connection with the action, the plaintiffs and the defendant stipulated to the material facts. Those facts are set forth in the Appeals Court opinion, 33 Mass. App. Ct. at 236-237, as follows: "The plaintiffs' residence in Granby abuts and is downgrade from a residence at 26 Cedar Drive. Number 26 was heated by oil and was originally equipped with a fuel storage tank in the basement. At some point, previous owners of the property at 26 Cedar Drive decided to remove the fuel storage tank from the basement and to install an underground storage tank in their yard.

"One or more of the following events then took place: (1) the previous owners of 26 Cedar Drive either (a) negligently failed properly to remove or seal the disconnected fuel oil delivery line that led into the basement, or (b) negligently removed or altered the seal on the disconnected fuel delivery line; or (2) the current owners of 26 Cedar Drive negligently failed to direct delivery of heating oil into the correct fuel delivery line; or (3) an oil delivery company, making a delivery for the current owners, negligently failed to determine whether the fuel delivery line into which it delivered oil was properly attached to a fuel storage tank at 26 Cedar Drive.

---

[2]The opinion of the Appeals Court is reported at 33 Mass. App. Ct. 235 (1992).

"As a result of one or more of the above negligent acts, approximately 500 gallons of fuel oil was pumped through the disconnected fuel delivery line into the basement of the home at 26 Cedar Drive through the disconnected fuel delivery line. The oil then seeped out of the basement and migrated underground to the plaintiffs' property. It contaminated the plaintiffs' well and caused other damage to the plaintiffs' property."

Based on these facts, the parties filed cross motions for summary judgment. The plaintiffs contended that their damages were caused by the negligence of others for which the defendant's policy provides coverage. The defendant maintained that the damages were subject to a provision in the policy which excluded from coverage "loss . . . caused by . . . release, discharge or dispersal of contaminants or pollutants." A judge in the Superior Court granted the plaintiffs' motion for summary judgment, and an amended judgment entered which declared that the plaintiffs were entitled to coverage and payment under the policy.

The Superior Court judge relied on the decision in *Standard Elec. Supply Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.*, 1 Mass. App. Ct. 762 (1973), in allowing summary judgment for the plaintiffs. The Appeals Court agreed that this decision controlled the case. 33 Mass. App. Ct. at 237-238. In the *Standard Elec. Supply Co.* case, a water pipe burst in the basement of premises adjacent to the plaintiff's property and collected water seeped into the plaintiff's basement causing water damage to the contents located there. The defendant's insurance policy insured against "all risks of physical loss," but contained an exclusion for "loss caused by, [or] resulting from . . . water below the surface of the ground including that which . . . flows, seeps or leaks through . . . foundations, walls, basement or other floors." *Id.* at 763 & n.1. The Appeals Court decided that the "[l]oss from the bursting of a pipe on the premises of another would seem to be the kind of 'fortuitous loss' which is 'not usually covered under other insurance' and against which an 'all risk' policy is designed to extend protection" (citations omitted). *Id.* at

763. The court then went on to reject the defendant's contention that the exclusion applied, stating that the contention was "inconsistent with the well established principle that recovery on an insurance policy is allowed 'where the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk.' " *Id.* at 765-766, quoting Appleman, Insurance Law and Practice § 3083, at 311.

The principle quoted above is based on a test which has long been used by this court to resolve coverage controversies in chain causation cases. That test seeks to determine the efficient proximate cause of the loss. If that cause is an insured risk, there will be coverage even though the final form of the property damage, produced by a series of related events, appears to take the loss outside of the terms of the policy. The decision in *Lynn Gas & Elec. Co.* v. *Meriden Fire Ins. Co.*, 158 Mass. 570, 575 (1893), explained this test of causation in the following manner: "When it is said that the cause to be sought is the direct and proximate cause, it is not meant that the cause or agency which is nearest in time or place to the result is necessarily to be chosen. . . . The active efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started and working actively from a new and independent source is the direct and proximate cause referred to in the cases. . . ." (Citations omitted.)

Three decisions furnish examples of our application of the train of events test to coverage disputes in first-person insurance cases. In *Lynn Gas & Elec. Co., supra,* coverage was found for damaged machinery under a fire insurance policy, where a minor fire caused a short circuit in electrical wiring, which affected an electric dynamo. This, in turn, resulted in damage to machinery connected by belts and pulleys to the dynamo, some of which disintegrated. Damage then resulted to yet other pieces of equipment, none of which had been touched by the fire itself. This court held the fire to be the proximate cause of the loss in accordance with the causation test stated therein, and permitted recovery. *Id.* at 577.

In *Jiannetti* v. *National Fire Ins. Co.*, 277 Mass. 434, 439 (1931), firefighters removed and replaced a skylight over an insured store while fighting a fire in adjoining premises. There was evidence that the skylight was improperly replaced, resulting in water damage to inventory when the skylight leaked during a rain storm. This court held that the jury could correctly find a proximate causal relationship between the acts of the fire department in fighting the fire and the rain damage, thereby upholding an award under the insurance policy which afforded protection only for loss by fire. *Id.* at 440.

In *Barnett* v. *John Hancock Mut. Life Ins. Co.*, 304 Mass. 564, 565-568 (1939), the insured had a life insurance policy providing double indemnity for accidental death. He was involved in an automobile accident, was treated for nine days in a hospital and then returned to work. He subsequently developed pneumonia and died three months after the accident. There was evidence that he was weakened by the accident and that this weakness permitted the pneumonia bacteria, which may not have entered his body until after the accident, to take hold and thrive. This court held that the jury were warranted in finding the accident alone to be the proximate cause of the insured's death and to award double indemnity. *Id.* at 568.

The law in other jurisdictions generally is in accord with the *Standard Elec. Supply Co.* case and our case law. See *Sabella* v. *Wisler*, 59 Cal. 2d 21, 31-32 (1963); *Frontis* v. *Milwaukee Ins. Co.*, 156 Conn. 492, 499 (1968); *Fawcett House, Inc.* v. *Great Cent. Ins. Co.*, 280 Minn. 325 (1968); *Villella* v. *Public Employees Mut. Ins. Co.*, 106 Wash. 2d 806 (1986). See also 18 G. Couch, Insurance § 74:711 (2d rev. ed. 1983). The defendant has offered no persuasive authority to the contrary.[3] In this case, it was stipulated that,

---

[3]*Bettigole* v. *American Employers Ins. Co.*, 30 Mass. App. Ct. 272 (1991), concerned a special multi-peril policy insuring against risks of direct physical loss to property but excluding loss caused by corrosion. *Id.* at 273-274. The insured's parking garage was damaged by the effect of deicing salts, brought in on the wheels of vehicles, which corroded the steel

as a result of one or more negligent acts on property adjacent to the plaintiffs' property, fuel oil seeped underground and damaged the plaintiffs' property. The defendant's insurance policy expressly covered losses caused by the negligence of a third party. As the Appeals Court correctly reasoned: "That covered event, like the bursting pipe in *Standard Elec. Supply Co.* v. *Dedham Mut. Fire Ins. Co.*, *supra*, set in motion a

---

and concrete of the structure. The court rejected the insured's attempt to bring this case within the doctrine of *Standard Elec. Supply Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.*, 1 Mass. App. Ct. 762 (1974), noting that there was no covered risk distinct from, and preceding, the corrosion affecting the building. *Id.* at 276. *Bettigole* did not purport to alter the rule of *Standard Elec. Supply Co.*, and therefore provides no support for the defendant's position. Similarly, in *League of Minn. Cities Ins. Trust* v. *Coon Rapids*, 446 N.W.2d 419 (Minn. Ct. App. 1989), the insured failed to identify a discrete antecedent occurrence that caused the contamination at issue. *McQuade* v. *Nationwide Mut. Fire Ins. Co.*, 587 F. Supp. 67 (D. Mass. 1984), is of no greater assistance to the defendant. In that case, the plaintiff conceded that his property loss was caused by an excluded risk. In *Auten* v. *Employers Nat'l Ins. Co.*, 722 S.W.2d 468 (Tex. Ct. App. 1987), the court rejected the plaintiffs' claim that because an antecedent act of negligence (faulty application of pesticide) caused contamination they were entitled to coverage. *Auten* is in accord with the defendant's position. In view of the better reasoned authority to the contrary, we are not persuaded by this decision.

The defendant also directs our attention to four recent cases interpreting "absolute" or "total" pollution exclusion clauses in commercial liability insurance policies. See *Western World Ins. Co.* v. *Stack Oil, Inc.*, 922 F.2d 118 (2d Cir. 1990); *Guilford Indus. Inc.* v. *Liberty Mut. Ins. Co.*, 688 F. Supp. 792 (D. Me. 1988), aff'd, 879 F.2d 853 (1st Cir. 1989); *Vantage Dev. Corp.* v. *American Env't Technologies Corp.*, 251 N.J. Super. 516 (1991); *Budofsky* v. *Hartford Ins. Co.*, 147 Misc. 2d 691 (N.Y. Sup. Ct. 1990). These cases address pollution exclusion clauses which have been recently amended (and broadened) by the insurance industry. Previously, policies of this type excluded liability coverage for pollution damage to third parties' properties unless the damage was caused by a sudden and accidental release of pollutants. See, e.g., *Lumbermens Mut. Casualty Co.* v. *Belleville Indus., Inc.*, 407 Mass. 675 (1990). In the cases cited by the defendant, the courts have concluded that the new pollution exclusion language, viewed in the context of the entire policy, is meant to apply regardless of any possible negligent or accidental antecedent occurrence which might have contributed to causing the pollution or contamination. In contrast, the homeowner's policy at issue does not clearly and unambiguously exclude coverage for pollution or contamination caused by an antecedent negligent action, which is a covered risk. Thus, the policy brings into play the train of events test which operates to the plaintiffs' benefit.

chain of circumstances that resulted in the contamination of the plaintiffs' well, a loss that constitutes an event excluded under the policy. However, where the excluded event is not the cause of the loss, but rather the *result* of a covered risk, the insured may recover. *Standard Elec. Supply Co., supra* at 766. See *Bettigole* v. *American Employers Ins. Co.*, 30 Mass. App. Ct. 272, 276 (1991) (the court noted that there is no recovery where the excluded event causes the loss, but there is recovery where a covered event causes a loss in the form of an excluded event)." 33 Mass. App. Ct. at 237-238. This result is entirely in accord with the definition of efficient proximate cause in train of events cases such as the *Lynn Gas* case, and its progeny.

The defendant's contention that the proximate cause of the plaintiffs' loss was the release of oil which is an excluded event cannot be accepted in view of the stipulation which establishes that the pumping of oil into the wrong line occurred "as a result of" one or more negligent acts, thereby setting off a stipulated chain of events which concluded with damage to the plaintiffs' property. The stipulation clearly separates the acts of negligence from the release of the oil.

The other arguments of the defendant seeking exclusion of the loss under the "acts and decisions" and "faulty design" provisions of the policy were considered and rejected by the Appeals Court. 33 Mass. App. Ct. at 238-239. We agree with the Appeals Court's conclusions that these provisions are of no help to the defendant.

We also reject the claim that the public interest will not be served by a decision for the plaintiffs, which will enable insureds to recover despite pollution exclusions in policies, because some negligence almost always can be found in a chain of events leading to loss caused by pollution or contamination to property. It is suggested that, if the plaintiffs' position is accepted, insurers will be unable to exclude liability in circumstances similar to those presented in this case. The plaintiffs' policy's exclusion section has a preamble providing: "We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any

other cause or event contributing concurrently or in any sequence to the loss." If the pollution exclusion had been listed in the general exclusion section, following this preamble, an insured plainly would be foreclosed from invoking the train of events rule of the *Standard Elec. Supply Co.* case. Additionally, if the defendant intended to exclude liability for physical loss to property from pollution or contamination, however caused, the pollution exclusion clause should have been listed in the general exclusion section. Under the policy as drafted, pollution or contamination caused by an antecedent negligent act is a covered risk. If an insurer desires to eliminate coverage for pollution or contamination caused by a fortuitous negligent act, language accomplishing that purpose, and the means to do so, are readily available.

The amended judgment is affirmed.

*So ordered.*