Brassard, J.
The Town of Wakefield (“the Town”) brought this action against Royal Insurance Company (“Royal”), seeking declaratory judgment and alleging breach of contract and violation of G.L.c. 93A. The matter is before the court on cross-motions for summary judgment. For reasons stated, summary judgment is granted to Royal and denied to the Town.
BACKGROUND
For the purposes of these cross-motions for summary judgment, the following facts are undisputed:
On or about 7:15 A.M. on August 12,1992, an oil leak was discovered in the boiler room of Wakefield High School. The leak began sometime between 4:00 P.M. on August 11 and its discovery the following morning.
The Town’s oil service provider examined the site and determined that a gasket failure caused the leak. Royal’s investigator similarly determined that the oil leak was caused by a gasket failure, and that the size of the oil spill was caused by the continuous operation of the oil pumps when the boilers were not in service.
Some of the oil drained into a sump pump and entered the sewer system, through which it flowed to the Massachusetts Water Resources Authorily (“MWRA”) treatment plant on Deer Island. The Town hired a contractor to clean up the boiler room of the high school and to remove the oil from the MWRA treatment plant. The Town then sought from Royal, its insurer, reimbursement of the amount charged by the contractor.
The insurance policy in effect at the time of the oil spill consists of a Commercial General Liability Coverage Part (“the CGL coverage”) and a Commercial Property Coverage Part (“the property coverage”). The CGL coverage states, “We will pay those sums that the insured becomes legally obligated to pay as damages because of. . . ‘property damage’ to which this insurance applies.” This portion of the CGL coverage contains an “absolute pollution exclusion” which excludes coverage of". . . (2) Any loss, cost or expense arising out of any: (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or (b) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of pollutants.” This exclusion contains the following definition: “Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.”
The CGL coverage also covers personal injury claims, which the policy defines as “injury, other than ‘bodily injury,’ arising out of one or more of the following offenses:... (c) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner landlord or lessor . . .”
The property coverage provides: “We cover your interest in and will pay for direct physical loss of or damage to all real and business personal property (a) owned [by the insured] . . .” Exclusion 4 to the property coverage provides: “We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of ‘pollutants’: . . . (b) At insured premises unless the discharge, dispersal, seepage, migration, release or *42 escape is itself caused by . . . explosion . . . [or] falling objects . . . But if loss or damage by any of the above specified causes or loss results, we will pay for that resulting loss or damage.” The properly coverage defines pollution as “any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.”
Both Royal and the Town have now moved for summary judgment, based on their respective interpretations of the insurance contract.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time Inc., 404 Mass. 14, 16017 (1989). Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgment as a matter of law. Cassesso, supra.
The interpretation of an insurance contract is a question of law. Cody v. Connecticut General Life Insurance Co., 387 Mass. 142, 146 (1982). Where the terms of an exclusionary clause are plain and free from ambiguity, the words of the policy must be construed in their usual and ordinary sense. Barnstable County Mutual Fire Ins. Co. v. Lally, 374 Mass. 602, 605 (1978). An ambiguity exists in an insurance contract when the language contained therein is susceptible of more than one meaning. Jefferson Ins. Co. of New York v. Holyoke, 23 Mass.App.Ct. 472, 474 (1987). A clause is ambiguous if it is shown that reasonably intelligent people would differ as to which one of two or more meanings is the proper one. Id. at 474-75. However, an ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the others. Id. at 475.
1.MWRA Plant Clean Up — Pollution Exclusion
The Town claims, first, that the property damage portion of the CGL coverage requires Royal to pay for the clean up at the MWRA plant. Royal claims that, because oil is a pollutant, the cost of its clean up at the MWRA plant is excluded by the absolute pollution exclusion. The Town concedes that in most circumstances oil released into the environment constitutes a pollutant under the exclusion definition, but asserts that a question of fact exists about whether oil at a wastewater treatment plant is a pollutant, given that the purpose of the plant is to treat “waste.”
In construing a pollution exclusion which similarly referred to “discharge,” “dispersal,” “release,” and “escape” of pollutants, the Supreme Judicial Court has held that these terms “generally are used with reference to damage or injury caused by improper disposal or containment of hazardous waste.” Atlantic Mutual Ins. Co. v. McFadden, 413 Mass. 90, 92 (1992). By this definition, the oil at the waste treatment plant was clearly a pollutant; otherwise there would have been no need to hire a contractor to separate it out from the other waste there and properly dispose of it. The absolute pollution exclusion clause therefore applies to the clean up of the oil from the MWRA plant, and Royal was not required to provide coverage under the property damage clause of the CGL coverage.
2.MWRA Plant Clean Up-Personal Injury Coverage
The Town next asserts that Royal is required to pay for the clean up at the MWRA plant under the personal injury coverage of the CGL policy, to which the absolute pollution exclusion does not apply. The personal injury portion of the policy covers “injury . . . arising out of one or more of the following offenses:. . . (c) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner landlord or lessor . . .”
This language clearly does not cover the situation at hand. The only reasonable reading of the contract language cited above is that “the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy” must be by or on behalf of the owner, landlord, or lessor. In this case, the Town argues that oil wrongfully entered the MWRA treatment plant. The oil did not enter the plant on behalf of the plant’s owner, landlord, or lessor, which would be the MWRA itself. Therefore, the personal injury coverage does not apply to the entry of oil into the treatment plant or its subsequent clean up.
3.School Clean Up
Finally, the Town argues that the property coverage policy provides coverage for the clean up at the school. This policy excludes coverage for “loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of ‘pollutants’: ... (b) At insured premises unless the discharge, dispersal, seepage, migration, release or escape is itself caused by . . . explosion . .. [or] falling objects.” The Town argues that the policy covers the clean up of the high school boiler room because it insures against any results of the gasket failure; and that Royal has not sustained its burden of proving that the leak was not caused by an explosion or by a falling object.
The Town relies on the “train of events test” articulated in Jussim v. Massachusetts Bay Ins. Co., 415 Mass. 24 (1993), to argue that the oil leak was a covered event. In Jussim, negligence caused 500 gallons of fuel oil to pump through a disconnected fuel *43 delivery line and seep onto the plaintiffs property. Id. at 26. The plaintiffs argued that their insurance company should provide coverage because their policy included coverage for damages caused by negligence of others. Id. The insurance company asserted that an exclusion from coverage for loss caused by the release of pollutants applied. Id. The Supreme Judicial Court stated that if the efficient proximate cause “is an insured risk, there will be coverage even though the final form of the property damage, produced by a series of related events, appears to take the loss outside of the terms of the policy.” Id. at 27. The Court stated, however, that this train of events test would not have applied if the pollution exclusion had followed language stating, “we do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.” Id. at 30-31.
In Hanover New England Ins. Co. v. Smith, 35 Mass.App.Ct. 417 (1993), the Massachusetts Appeals Court held that policy language stating that any ensuing loss “not excluded or excepted in this policy is covered,” id. at 418, “cuts across the train of events analysis,” id. at 420, in that the policy language itself states which ensuing losses are covered and which are not.
The policy language insuring the Town just as clearly negates the application of the train of events analysis. The policy states that loss or damage caused by the discharge of pollutants is excluded “unless the discharge ... is itself caused by [enumerated events].” The policy language therefore states exactly what antecedent events will result in coverage. Therefore, if the leakage was not caused by one of those enumerated events, the exclusion applies.
The Town further argues that Royal is liable because it has not negated the possibility that the leak was caused by an explosion or by a falling object, both of which are covered antecedent events under the exception to the pollution exclusion. An insurer has the burden of proving that a policy exclusion applies. Murray v. Continental Ins. Co., 313 Mass. 557 (1943). I am unaware of any Massachusetts appellate decision which has addressed the issue of which party has the burden of proving that an exception to an exclusion applies. See Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 753, fn. 3 (1993) (declining to decide whether the insurer or the insured has the burden of proving that a pollution discharge was sudden and accidental, falling into an exception to an exclusion). Authorities are split on this issue, but a majority of state courts now place the burden on the insured to prove that a pollution discharge was “sudden and accidental,” and therefore falls into an exception to a pollution exclusion. See Interex Corp. v. Atlantic Mutual Ins. Co., 874 F.Supp. 1406, 1416 (D.Mass. 1995). In Interex Corp., the United States District Court for the District of Massachusetts held that the burden to prove the exception should be with the insured, because this result aligns the burden with the benefit. Id. at 1417, citing Aeroquip Corp. v. Aetna Cas. & Sur. Co., 26 F.3d 893, 895 (9th Cir. 1994). The Court in Interex Corp. further reasoned that if the burden were placed on the insurer, “a property owner might then have the unfortunate incentive to remain ignorant about the cause of any release or discharge in order to increase the chance of coverage.” Interex Corp. v. Atlantic Mutual Ins. Co., supra at 1417.
I find the Interex Corp. decision persuasive, and that its logic extends beyond the specific issue addressed by the Court to a general proposition that the burden of proving an exception to an exclusion should fall to the insured. In this case the Town, as the insured party, has the burden of proving that the oil leak was caused by an incident enumerated in the exceptions to the pollution exclusion. To overcome Royal’s motion for summary judgment, it must put forth at least some admissible evidence on this point. I find that it has not met this burden.
The Town first argues that the leak may have been caused by an explosion. This conclusion is purely speculative. The Town cites the fact that 6,000 gallons of oil flowed from the pipe, but it submitted no evidence addressing whether this flow occurred in the course of many hours or a few minutes. The Town further points to evidence that the flow of oil began when a gasket failed. Failure of a gasket, without more, does not prove that an explosion occurred. Because the Town has been unable to put forth any evidence showing that there was an explosion, it did not meet its burden of production to overcome a motion for summary judgment on this issue.
The Town next argues that the oil spill may have been caused by a falling object, which is another exception to the pollution exclusion. The Town asserts that because a piece of the gasket was missing at the time the leak was discovered and investigated, this piece must have fallen from the pipe and caused the discharge. This argument is disingenuous. The falling object exception can only be reasonably construed to refer to an object falling onto a container of pollutants, thus causing the pollutants to be expelled, not to a piece of the container itself falling off, allowing the pollutant to leak out. The latter situation is equipment failure, and would have been referred to as such had the parties intended that it be a covered event.
I therefore find that on the undisputed facts the pollution exclusion to the property coverage insurance excuses Royal from liability, and that the town has not sustained its burden of producing evidence that an exception to the exclusion applies. 3 G.L.c. 93A.
Where an insurer correctly denies policy coverage, such denial can not be an unfair or deceptive act under G.L.c. 93A. Vaiarella v. Hanover Insurance Co., 409 Mass. 523, 530 (1991). Royal was correct in denying coverage to the Town, and therefore did not violate G.L.c. 93A.
*44 ORDER
For the foregoing reasons, it is hereby ORDERED that Royal Insurance Company’s motion for summary judgment be GRANTED and that the Town of Wakefield’s motion for summary judgment be DENIED.