USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 97-1553 PREFERRED MUTUAL INSURANCE COMPANY, Plaintiff, Appellant, v. THE TRAVELERS COMPANIES, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Michael A. Ponsor, U.S. District Judge] ___________________ [Hon. Nancy Gertner, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Aldrich, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Marie Cheung-Truslow with whom Roger A. Emanuelson and Lecomte, ____________________ ____________________ ________ Emanuelson, Motejunas & Doyle were on brief for appellant. _____________________________ Michael J. Eisele with whom David C. Boch and Bingham, Dana & __________________ ______________ ________________ Gould were on brief for appellee. _____ ____________________ October 3, 1997 ____________________ ALDRICH, Senior Circuit Judge. On January 20, _____________________ 1995, an oil fire broke out in the boiler room of the Kimball Towers condominium in Springfield, Massachusetts, that caused extensive damage from smoke, soot and heat. Kimball Towers Condominium Association (Kimball) was insured by Preferred Mutual Insurance Company (Preferred) under a Business Owners Special Property Policy that covered its property broadly, with a limit of $11,340,000 and an annual premium of $40,484. With some exceptions, the policy did not cover steam or hot water boilers and their equipment. Kimball was also insured by Travelers Company (Travelers) under a Boiler and Machinery Policy. Boiler provisions complementary with Preferred's have been noted. Travelers' policy had no dollar limitation; the annual "Provisional Premium"1 was $875. Preferred paid this loss,2 in the amount of $357,279, and now sues Travelers for this amount as the "primary insurer," or, at least, for a share. A condition precedent is that Travelers would have been liable for the loss. The district court held that there was no such coverage, so that neither alternative was correct, and granted summary judgment to Travelers in an extensive opinion. See Preferred Mut. Ins. Co. v. Travelers ___ _______________________ _________ Cos., 955 F. Supp. 9 (D. Mass. 1997). Without deciding, it ____  ____________________ 1. The elasticity related to offered extensions not subscribed to by Kimball, and not here relevant. 2. No point has been made by it of any loss to Kimball's boiler and accessory equipment. -2- assumed that Travelers' policy's general provisions covered the loss -- an assumption not contested, and that we adopt -- but concluded that it fell within the stated exclusions. On this basis we affirm. The Facts _________ On summary judgment we of course take the facts most favorably to plaintiff Preferred, but review the court's legal conclusions de novo. See, e.g., Dominique v. Weld, 73 _________ _________ ____ F.3d 1156, 1158 (1st Cir. 1996); E.E.O.C. v. Steamship Clerks ________ ________________ Union, Local 1066, 48 F.3d 594, 602-03 (1st Cir.), cert. __________________ _____ denied, 116 S. Ct. 65 (1995). Construction of insurance ______ contracts and application of their terms to established facts are matters of law, ultimately for us. See Commercial Union ___ ________________ Ins. Co. v. Walbrook Ins. Co., 7 F.3d 1047, 1050 (1st Cir. _________ __________________ 1993); Falmouth Nat'l Bank v. Ticor Title Ins. Co., 920 F.2d ___________________ ____________________ 1058, 1061 (1st Cir. 1990). The fire, according to Preferred, occurred in the following manner. A leaky seal in the fuel pump, that supplied oil to the burner that heated the boiler, allowed oil to be propelled, with air, into the burner tube. Here it caught fire. This fire caused a melt, allowing the burner to fall, damaging the oil line. This released oil, fed by gravity from the storage supply, that caught fire and burned until ultimately extinguished by the fire department. -3- The relevant Travelers' policy provisions (quoted out of order) are these. A. COVERAGE We will pay for direct damage to Covered Property caused by a Covered Cause of Loss. 1. Covered Property ________________ Covered Property, as used in this Coverage Part, means any property that: a. You own; . . . . . 2. Covered Cause of Loss _____________________ A Covered Cause of Loss is an "accident" to an "object." . . . . . G. DEFINITIONS 1. "Accident" means a sudden and accidental breakdown of the "object" or part of the "object." . . . . . 5. "Object" means: a. Unless excluded in the Declarations, the following equipment: (1) Any boiler, including its piping and accessory equipment. Interrupting, we read the policy to say that Travelers will pay (subject to exclusions) for direct damage to Kimball's property due to the breakdown of the boiler and its accessory equipment. We consider the burner, the burner -4- tube, the mechanical fuel pump, and the electric motor that operates it, to be accessory equipment. Leaking was a breakdown, or "accident." B. EXCLUSIONS We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. . . . . . 4. Other Exclusions Loss caused by or resulting from: a. Fire or combustion explosion that occurs at the same time as an "accident" or that ensues from an "accident." With respect to any electrical equipment forming a part of an "object," this exclusion is changed to read: Fire or explosion outside the "object" that occurs at the same time as an "accident" or ensues from an "accident." . . . . . The initial paragraph unambiguously means what it says. If the fire fell within the provisions of section B4a it is not covered even though it also met some other definitions. Cf. Jussim v. Massachusetts Bay Ins. Co., 415 ___ ______ __________________________ Mass. 24, 27-28, 610 N.E.2d 954, 955-56 (1993) (noting that if the proximate cause "is an insured risk, there will be coverage even though the final form of the property damage, produced by a series of related events, appears to take the -5- loss outside the terms of the policy"). Preferred says the present issue lies in provision 4a's second sentence because the loss was caused by the breakdown of the fuel pump that was "electrical equipment" because it was operated by an electric motor. Although there was some struggling vocalizing by Preferred's expert, we can not possibly agree. We do not rely on the much mentioned fact that the pump and the motor were by different manufacturers, but they were independent articles, connected only by the power shaft, with no electricity reaching the pump. Manifestly there must be some purpose for the alternative clause in provision 4a, and, equally manifestly, electricity must play a meaningful part. To characterize the pump as electrical is nonsense. Turning, therefore, to 4a's first sentence, concededly the leak in the pump was an accident to an object. Whether or not the broken supply line also be considered accessory equipment, the burning of the fuel supply unquestionably "ensue[d] from an 'accident.'" It was plainly excluded. In this posture Preferred complains that this conclusion "result[s] in coverage to the insured which [i]s unrealistically limited." Support is offered by an affidavit of Kimball's "property manager," who had obtained the policies: It has been my continued understanding and expectation that fire -6- originating from the boiler or its accessory equipment would be covered under Travelers' Boiler and Machinery Policy. Thus we have an insurer that had received a premium of $40,484, claiming it was unreasonable for an insurer who had received a premium of $875 not to pay it $357,279, in part, if not in whole. The lion would lie down with the lamb -- for dinner. The Boiler and Machinery policy covered accidents to the boiler and accessory equipment, and, in terms, excluded "fire . . . that ensues from an 'accident.'" There was an accident, and fire ensued. Plaintiff, who is in the business of writing and interpreting insurance contracts, sues therefor. We give notice that if it wishes to object to our assessing double costs it do so, with grounds, within ten days of the date hereof. See Fed. R. App. P. 38; Cronin v. ___ ______ Town of Amesbury, 81 F.3d 257, 261 (1st Cir. 1996); E.H. _________________ ____ Ashley & Co. v. Wells Fargo Alarm Servs., 907 F.2d 1274, 1280 ____________ ________________________ (1st Cir. 1990). Affirmed. ________ -7-